356 So.2d 396 (1977)
STATE of Louisiana
v.
James CASS.
No. 59924.
Supreme Court of Louisiana.
December 19, 1977.
Rehearing Denied March 3, 1978.
Irving M. Greenberg, Jack H. Kaplan, Gamm, Greenberg & Kaplan, Shreveport, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John A. Richardson, Dist. Atty., Eugene W. Bryson, Jr., Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
James Cass was indicted by the grand jury for the Parish of Caddo for the crime of aggravated rape in violation of La.R.S. 14:42. Subsequently, on motion of the state, the indictment was amended to charge defendant with attempted aggravated rape. La.R.S. 14:27. After trial by jury, he was found guilty as charged and was sentenced to serve twenty years at hard labor. On appeal, defendant relies on *397 eight assignments of error for reversal of his conviction and sentence. Two other assignments of error have not been briefed and are therefore considered abandoned. State v. Jones, 340 So.2d 563 (La.1976). Finding merit in defendant's assignment of error number one, we reverse defendant's conviction and sentence.[1]

ASSIGNMENTS OF ERROR NOS. 1 AND 2
Defendant contends in these assignments of error that the trial judge erred in removing a juror during trial and substituting an alternate juror in his place when the juror allegedly fell asleep during the victim's testimony on cross-examination. Defendant argues that the conduct of the juror did not render him unfit or disqualified to perform his duties and, hence, he was improperly removed. In explaining his reasons for removing the juror, the trial judge stated that when he observed the juror sleeping he became concerned that he was ill. After the juror was removed and replaced, defendant moved for a mistrial, which the trial judge denied.
The record indicates that shortly before the end of the first day of trial the judge apparently noticed that one of the jurors appeared to be asleep. The judge indicated that the juror's head was hanging low, often-times bobbing or nodding, and his eyes were closed. After two to four minutes of such observation the judge summarily ordered the removal of the juror. Before leaving the courtroom the juror twice stated aloud that he had not been asleep.[2]
Article 789 of the Louisiana Code of Criminal Procedure provides in pertinent part:
"The court may direct that one or two jurors in addition to the regular panel be called and impaneled to sit as alternate jurors. Alternate jurors, in the order in which they are called, shall replace jurors who become unable to perform or disqualified from performing their duties prior to the time the jury retires to consider its verdict. . . . (emphasis ours)
In two recent decisions rendered by this Court we have had the opportunity to discuss the serious nature of a trial court's removal of a juror and the circumstances under which such a procedure would be deemed proper. In State v. Buggage, 351 So.2d 95, 96, decision rendered October 10, 1977 this Court, per the Chief Justice, cited the following language authored by Justice Summers in State v. Rounsavall, 337 So.2d 190 (La.1976) relative to the replacing of a regular juror with an alternate:
"Alternate jurors are drawn and serve to replace jurors who become unable to perform or who are disqualified from performing their duties prior to the time the jury retires to consider its verdict. La. Code Crim.Pro. art. 789. And, while the court may disqualify a prospective juror from service in a particular case when for any reason doubt exists as to the competency of the prospective juror to serve in the case, ibid. arts. 783, 787, once the trial has begun by the swearing of the first juror selected, ibid. art. 761, and the jurors are accepted and sworn, they may not be removed unless they are `incompetent to serve', ibid. art. 796.
"Once a jury has been selected and sworn the accused has a right to have his fate decided by the particular jurors selected to try him. The phrase `incompetent to serve' embodied in Article 796 *398 refers to death, illness or any other cause which renders a juror unfit or disqualified to perform his duty as prescribed. The right of the accused to have a juror selected by him try the case is a substantial one, the improper deprivation of which is prejudicial. The doctrine of harmless error is, therefore, inapplicable. State v. White, 244 La. 585, 153 So.2d 401 (1963); State v. Willie, 130 La. 454, 58 So. 147 (1912)."
Consistent with State v. Buggage, supra, and State v. Rounsavall, supra, and applying Art. 789 C.Cr.P. we determine that even if the juror in question did briefly doze off, such is not per se proof of inability to perform, or any character of disqualification. Thus, there would be no legal cause for removing him. Had the juror been shown to have been sleeping through a substantial part of the trial or had he been unable to stay awake despite warnings or efforts to arouse him, and had defendant and the state been afforded an opportunity to explore on the record the defendant's inability to perform on this account, we would be presented with a substantially different question for review.
Under the circumstance present here, the assignment has merit. We hold that the trial judge erred in summarily removing the juror under the circumstances and in the manner which he did, and in refusing defendant's motion for a mistrial. For this reason, we reverse defendant's conviction and sentence and remand the case for a new trial.

OTHER ASSIGNMENTS OF ERROR
As the case will be remanded to the district court and defendant will probably be retried, we deem it advisable to discuss other assignments of error alleged by defendant which are likely to recur in the new trial.
In brief defendant alleges that the trial court erred in denying defendant's motion for a subpoena duces tecum.[3] The subpoena was directed to the Sheriff and District Attorney of Bossier, an adjoining Parish, and would have ordered them to produce all notations and documents reflecting the time period on the day of the crime during which defendant aided the State Police in an attempt to make an undercover purchase of marijuana. The state contends that such information was properly denied the defendant as the same information could have been obtained by subpoenaing the officers who were with the defendant on the night of the crime.
Some discretion is of course granted a trial court in granting or denying an out-of-parish subpoena. Article 740 of the Louisiana Code of Criminal Procedure requires the party requesting the subpoena to show that the material sought is "relevant, material and not cumulative." The court must then conduct its own inquiry to determine whether the evidence is "indispensable to the trial or hearing," which we interpret to mean indispensable to a fair trial or hearing. (This article speaks merely of subpoenas but is also applicable to subpoenas duces tecum. See Official Revision Comment "E", thereunder.)
In the present case it would seem that the information sought by the defendant was relevant, material and non-cumulative and more than likely indispensable to a fair trial. It might well have established or tended to show that defendant was elsewhere at the time the crime was committed.[4]
*399 In assignment of error number three defendant contends that the trial judge erred in permitting an expert witness in the field of fingerprinting to testify as to the time that a latent print had been left on the trunk of the vehicle in which the crime was committed where no control test had been conducted on the vehicle.
On direct examination, Deputy Jim Hood, who had been qualified as an expert in the field of fingerprinting, was asked a hypothetical question based on facts previously admitted in evidence. He was asked to assume that a car was cleaned on Saturday afternoon; around midnight an identification officer lifted a latent palm print from the top trunk lid of the vehicle at the exact spot where the victim of the crime had directed him after having informed him that defendant placed his hand there. (The evidence revealed that Danny Goode had washed his car on the afternoon of the day that the crime was committed and that defendant had placed Goode in the trunk of the car for a while during the crime.) Hood was asked when the print would have been placed on the trunk whereupon defendant objected to the hypothetical question on the ground that the witness could not render an opinion as to when the print was placed on the trunk in the absence of a control test being conducted. His objection was overruled. Thereupon the witness testified that the palm print would have been placed on the car after the car was washed. On cross-examination the witness denied that an accurate opinion could not be given as to how long a latent print had been on an object unless a control test had been conducted.
An opinion of an expert witness on facts not within his personal knowledge may be elicited by propounding a hypothetical question which is in proper form, provided the hypothesis assumes only facts which the evidence proves or tends to prove. State v. Schouest, 351 So.2d 462 (La.1977), handed down October 10, 1977. If the record supports the facts assumed, the hypothetical question is proper. In the instant case every fact on which the hypothesis was based was supported by the evidence. The question was therefore proper. Moreover, the expert witness denied that a control test was necessary to determine how long the latent prints had been on the object. The failure to conduct such a test does not render the testimony of the expert inadmissible but rather affects only its weight. Hence, defendant's objection to the testimony was properly overruled.
Assignment of error number three is without merit.
In assignment of error number four defendant contends that the trial court erred in admitting the in-court identifications of the defendant by the victim and an eyewitness to the crime. He contends that they were tainted by impermissibly suggestive out-of-court identifications made by the witnesses at a photographic lineup. We find this assignment to be nonmeritorious. Our review of the record does not indicate any impermissively suggestive actions by the police during the out-of-court identifications. But, even if it is assumed arguendo that the out-of-court identifications were tainted, if the in-court identifications had a source independent of the out-of-court identifications, then the in-court identifications do not violate defendant's due process rights. State v. Anthony, 332 So.2d 214 (La.1976); State v. Peevy, 321 So.2d 324 (La.1975). In the instant case, the eyewitness testified that the crime was committed on a bright moonlit night so that he could clearly see the assailant. Defendant was viewed at close range by both the victim and the eyewitness over a long period of time (a little less than an hour). In view of *400 the totality of the circumstances, the in-court identifications had an independent source and did not violate defendant's due process rights.

Decree
For the foregoing reasons the conviction and sentence of defendant Cass is reversed and the case is remanded to the district court for further proceedings consistent with the views expressed in this opinion.
REVERSED AND REMANDED.
NOTES
[1] It should be noted that defendant Cass was also tried and convicted for the crime of armed robbery arising out of this same attempted rape incident. Separate appeals of the two convictions were lodged in this Court. In a companion decision handed down this day, State v. Cass, 356 So.2d 936 (La.1977) No. 60,468, defendant's conviction and sentence for the crime of armed robbery had been affirmed.
[2] Defendant contends that he was particularly disturbed by the allegedly illegal removal of the juror because the state had no grounds to challenge him for cause and had been required to accept him (the twelfth juror chosen) because their peremptory challenges had been exhausted, and also because that juror's age, race and marital status, akin to that of the defendant, made him peculiarly susceptible to fairly judging the defendant.
[3] We note that this argument is not reviewable by this Court as the defendant has not made it an assignment of error. However, since the issue is likely to recur we treat the assignment for future trial guidance.
[4] It appears from defendant's testimony that he was working on the night of the crime as an undercover informer for the police in the detection of narcotic related crimes. He had been picked up at his residence by three police officers and was taken to Plain Dealing, Louisiana for the purpose of buying some marijuana from a local dealer. During his negotiations for the sale several of the officers and the defendant smoked marijuana.

The defendant's main defense at trial was that the officers did not return him home until such time after the commission of the crime as to make it impossible for him to have been the perpetrator.
The state's version of the facts has defendant deposited at his home sometime prior to the crime and then walking one-half mile to the victim's car and committing the crime he is charged with.
Considering these opposing theories it is clear that the evidence sought through the out-of-parish subpoena duces tecum was essential to a fair determination of a relevant issue in the case.