_[i_ROBERT J. BURNS, Judge Pro Tem.
The defendant, Rhashiedi Mohamed, appeals from his conviction of forcible rape, claiming that the trial judge erred in excusing over his objection a juror already selected and sworn to try his case. We find that the trial judge properly dismissed the juror for incompetence before the first witness was sworn. We, therefore, affirm the conviction and sentence for the following reasons.

PROCEDURAL HISTORY

The defendant was indicted by the Jefferson Parish Grand Jury on September 28, 1995 on the following charges: (1) one count of aggravated rape, in violation of LSA-R.S. 14:42, (2) one count of aggravated burglary, in violation of LSA-R.S. 14:60, and (3) one count of theft, in violation of LSA-R.S. 14:67.[1] Following a jury atrial on the charge of aggravated rape, he was found guilty of the lesser included offense of forcible rape, in violation of LSA-R.S. 14:42.1. Thereafter, the *882 defendant was sentenced to twenty-five years imprisonment at hard labor.

FACTS

The defendant complains that the trial court erred in granting the state’s challenge for cause of a juror already accepted and sworn. In essence, the state moved to dismiss Mr. Shawn Wharton on the basis that he was an incompetent juror pursuant to LSA-C.Cr.P. art. 796.
During jury selection, a prospective juror, Mr. Shawn Wharton, expressed that he did not wish to serve on the jury because he could not afford to miss work. Mr. Wharton also expressed that he would not want a juror in his frame of mind serving on a jury if he were on trial. The defendant’s counsel challenged Mr. Wharton for cause, on the basis that Mr. Wharton’s economic situation would distract his attention from the issues at trial. The trial judge denied this challenge, explaining that an economic situation was not sufficient grounds for cause. Neither the state nor the defendant exercised a peremptory challenge with respect to Mr. Wharton. Prior to the lunch recess, six of the twelve jurors were accepted and sworn.
Just before sending the six sworn jurors to lunch, the trial judge explained as follows:
The Court: Okay. Thank you. Now we’re going to treat you to lunch today. So my bailiff is going to take you all to a restaurant right cross the street for lunch.
And I’m going to ask that you not discuss anything about this case. We may I ago to 6:00 today, depending on how we — it will not be any later then 6:00. So if you have phone calls that need to be made, please do so.
And ... we’re trying to find out what the rules are about employers paying for — they’re supposed to pay you.
Whereupon Mr. Wharton expressed to the trial judge that it was costing him too much money to be in court.
Immediately after the lunch break, the bailiff for the 24th Judicial District Court made the following statement in court with respect to Mr. Wharton’s actions during the lunch break:
He just walked off. I was leading the jurors to lunch and we had crossed the street, we was there and we kept walking, and the lady told me, she said, “Look, I think that guy is leaving.” He left, and I couldn’t find him....
The record reflects that the court reporter finally found Mr. Wharton alone in the parking lot adjacent to the courthouse, whereupon he instructed Mr. Wharton to join the other jurors at the restaurant across the street. The trial judge made the following statement with regard to Mr. Wharton’s behavior:
The Court: Okay. I think he’s going to be a tremendously disruptive force....
I think he’s going to be a really disruptive force in this trial and, you know, I’d just as soon excuse this man for cause and get him out of here for today. But I’m going to order that he come back here tomorrow morning. I’m going to make him sit through the trial, that he’s not going to be relieved of his responsibility, because I think that everybody, every juror in here is missing their work and missing money. And I mean, you know, if he’s angry about that, sorry.
The state thereafter moved to dismiss Mr. Wharton because he disobeyed the instructions of the trial judge. Thereafter, an evi-dentiary hearing was conducted. Mr. Wharton explained that hepdid not realize that he was supposed to stay with the other jurors during the lunch break and that he had not spoken to anyone regarding the defendant’s ease. Mr. Wharton also stated that he did not want to serve on the jury and that he would not be doing so if it were not for the arrest warrant that would issue should he fail to appear in court.
Following this hearing, the state submitted its challenge and the trial judge dismissed Mr. Wharton, giving the following reasons:
... I’m going to strike this juror for cause. I don’t think he’s cooperative at this time. I think he’s not going to be cooperative and I think he’s going to be a disruptive force in this trial....

*883
LEGAL ANALYSIS

LSA-C.Cr.P. art. 796 provides as follows:
If it is discovered after a juror has been accepted and sworn, that he is incompetent to serve, the court may, at any time before the first witness is sworn, order the juror removed and the panel completed in the ordinary course. (Emphasis added).
Although the Louisiana Code of Criminal Procedure does not provide a definition of “incompetent,” the Louisiana Supreme Court interpreted the meaning of “incompetent” in State v. Cass, 356 So.2d 396, 397-398, (La.1977). In Cass, a juror allegedly fell asleep during testimony and the trial judge summarily ordered the removal of the juror. Prior to leaving the courtroom, the juror twice stated aloud that he had not been sleeping. Holding that the trial judge erred in summarily removing the juror, the Louisiana Supreme Court stated that “incompetent,” as used in LSA-C.Cr.P. art. 796, refers to “death, illness, or any other cause which renders a juror unfit or disqualified to perform his duty as | ..¡prescribed.” Id. Although this Court has no published opinions discussing this particular article, other appellate courts have interpreted it.
In State v. Robertson, 518 So.2d 579, 582-583 (La.App. 1 Cir.1987), writ denied, 523 So.2d 227 (La.1988), a juror failed to return to the courthouse the day after she was selected to serve on the jury because she had learned her employer would not pay her for the days she would spend on jury duty. Following the issuance of a summons, the juror reported back to court. When asked by the prosecutor whether she could be a fair and impartial juror in light of this situation, the juror explained that she could not because her mind would not be on the trial. The First Circuit held that because the juror’s answers indicated that she did not wish to serve on the jury and that she would not be paying attention to the trial, the trial judge had no choice but to excuse the juror pursuant to LSA-C.Cr.P. art. 796.
In State v. Taylor, 545 So.2d 1237 (La.App. 2 Cir.1989), judgm’t amended on other grounds, 551 So.2d 1332 (La.1989), a juror notified the court that he was losing business due to his inability to work and that this situation was causing him to be distracted from the case. The Second Circuit held that due to the juror’s testimony that he was unable to concentrate on the case, the trial judge’s ruling was not an abuse of discretion. See also State v. Wiley, 513 So.2d 849 (La.App. 2 Cir.1987), writ denied, 522 So.2d 1092 (La.1988)(trial judge properly dismissed juror whose decision-making ability was probably impaired and who could not concentrate on the trial because no one was home to take care of her children).

JCONCLUSION

In the present case, Mr. Wharton testified that he did not wish to serve on the jury, that he would not want a juror in his frame of mind on the jury and he stated on several occasions that he was upset about the wages that he would not receive during the trial. The defense initially challenged the juror for cause, which was denied.
Mr. Wharton did not follow the judge’s instructions regarding the lunch recess. The judge dismissed the juror and thereafter completed the selection of the remaining six jurors.
We find that the trial judge did not abuse her discretion in determining Mr. Wharton unfit and excusing him from the jury before the first witness was sworn pursuant to LSA-C.Cr.P. art 796.

ERROR PATENT REVIEW

An error patent review was also conducted in accordance with State v. Oliveaux, 312 So.2d 337 (La.1975), and no errors were found.
AFFIRMED.

. The district attorney later dismissed counts two and three.