hPEATROSS, J.
On February 14, 1996, Defendant, Kenneth Leon Brady, was convicted by a jury of one count of DWI, fourth offense, a violation of La. R.S. 14:98, and sentenced to ten years at hard labor, the first two to be served without the benefit of parole, probation or suspension of sentence. Defendant appeals his conviction and sentence. For the reasons stated herein, we affirm.

FACTS

On April 25,1995, Defendant was arrested for DWI, fourth offense. The State filed a bill of information charging Defendant as a fourth offender, alleging Defendant’s three prior DWI convictions as follows: # M:74364, 4th Judicial District, Ouachita Parish, January 30, 1991; # 93-M0620, 4th Judicial District, Ouachita Parish, October 18, 1993; and # 93-M1373, *1282 4th Judicial District, Ouachita Parish, October 18, 1993. Jury trial in this matter commenced on February 12, 1996, and concluded on February 14, 1996, with a conviction for DWI, fourth offense. Defendant was sentenced on April 17, 1996.
Defendant made an oral notice of intent to appeal the instant conviction and sentence. The notice of appeal was withdrawn, however, and Defendant filed a voluntary motion to dismiss his appeal, which was granted by this court on September 26, 1996. Appellant was granted the instant “out of time” appeal by the trial court on May 3,1999.

DISCUSSION

Assignment of Error No. 1: The evidence presented was insufficient to sustain Defendant’s conviction as a matter of law.

Defendant has failed to brief this assignment of error. Assignments of error which are neither briefed nor argued are considered abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989), writ denied, 558 So.2d 1123 (La.1990). We will, therefore, not consider this assignment.
| a Assignment of Error # 2: The trial court erred in overruling the objection of Defendant regarding the predicate DWI offenses.
Assignment of Error # S: The trial court erred in failing to sustain Defendant’s objections to the introduction of the predicate offenses in that one or more of the predicates failed to contain an adequate waiver of Defendant’s right of confrontation or an adequate advisal of the plea of guilty.
Defendant alleges that the predicate conviction, #M:74364, obtained January 30, 1991, was inadequate and should not have served as a basis for the present enhanced charge. In regard to the predicate conviction, Defendant pled guilty to DWI, first offense, a misdemeanor. Defendant complains that the court failed to determine whether he was able to read or write and his degree of sophistication. Defendant also argues that the Boykin[1] colloquy was flawed because the court failed to obtain a jury trial waiver from him.
In order for a misdemeanor guilty plea to be used as a basis for actual imprisonment, enhancement of actual imprisonment or conversion of a subsequent misdemeanor into a felony, the trial judge must inform the defendant that, by pleading guilty, he waives: (a) his privilege against compulsory self-incrimination; (b) his right to trial and jury trial where applicable; and (c) his right to confront his accuser. Boykin, supra; State v. Jones, 404 So.2d 1192 (La.1981). The trial judge must also ascertain that the accused understands what the plea connotes and its consequences. Id. It is the State’s burden to show that the defendant knowingly and expressly waived his Boykin rights when entering this guilty plea. State v. Santiago, 416 So.2d 524 (La.1982). To meet this requirement, the State may rely on a contemporaneous record of the guilty plea proceedings, i.e., either the transcript of the plea or the minute entry. State v. Bland, 419 So.2d 1227 (La.1982).
| ¡¡Defendant made no motion to quash in this matter. Instead, he simply objected to the admission of this conviction at trial. Specifically, Defendant argued that for the January 30, 1991 guilty plea, the trial court failed to properly inform him concerning his right to confront witnesses. Further, Defendant argued that the Boykin colloquy was faulty because the trial court failed to inform him of the consequences of a future conviction for DWI, fourth offense. Since Defendant did not raise the same issues at trial that he is now raising on appeal, the instant issues have been waived for failure to make a contemporaneous objection. La.C.Cr.P. art. 841(A).
*1283 We will, however, review the issues raised in these assignments of error. The January 30, 1991 trial court transcript indicates that Defendant was represented by counsel, was informed of the triad of Boy-kin rights by the trial court and entered into a plea bargain agreement wherein, in exchange for his guilty plea to DWI, first offense, the remainder of the charges lodged against him would be dismissed. The trial court clearly ascertained that Defendant was 32 years old and had graduated from high school. Thus, the trial court had a chance to question Defendant, who was represented by counsel at this predicate conviction, and was able to determine that he had some education and that he understood what was happening to him.
In addition, while it cannot be denied that the right to a trial is an important part of the three Boykin rights, and a more thorough explanation of this right would be desirable in any guilty plea proceeding, we conclude that the following exchange between Defendant and the trial court was sufficient in the absence of obvious confusion or misunderstanding by a defendant (which would be more likely to occur in the case of a defendant who is not represented by counsel):
Trial Court: Okay, Now if you plead guilty you’re giving up several rights, constitutional rights, and I want to explain these to you. First off, you have a right to remain silent which means that you don’t Uhave to talk to me now. Even if you went to trial you would not have to testify—
Defendant: —Yes, sir—
Trial Court: — and it wouldn’t be held against you. Obviously if you plead guilty and talk to me about this you’re giving up your right to remain silent. Do you understand that?
Defendant: Yes, sir.
Trial Court: You also have the right not to incriminate yourself, which means nobody, not even your lawyer, can — can make you plead guilty to anything, it has to be your decision.
Defendant: Yes, sir.
Trial Court: Your alternative is to go to trial and make the state prove you’re guilty. So if you plead guilty you are not only incriminating yourself and giving up that right not to do that but you’re also giving up your right to go to trial. Now let’s talk about a trial. If you went to trial for this matter it wouldn’t be now, today, it’d be some other time and the state at that time would have to put on evidence and witnesses and convince a judge that you were guilty of what they charge, driving March 29, 1990 under the influence of alcohol, and the judge would have to be convinced beyond a reasonable doubt. That means to where he had no doubt in his mind that you were guilty of the driving, the drinking, that you were under the influence, that the cops had a right to stop your car or whatever the facts were, I don’t know what they are. But they’d have to prove all of those — all those elements and all those facts. If they couldn’t convince the judge that you were guilty beyond this reasonable doubt you’d be found not guilty. And to prove you’re guilty they’d have to put on witnesses and every witness they put up here your lawyer, who is a good trial lawyer, would cross examine those witnesses—
Defendant: — Yes sir—
Trial Court: — and try to keep them from proving you’re guilty. You could call witnesses in your defense.
In addition, this was a plea to DWI, first offense, only, the remainder of the charges having been dismissed; and, thus, Defendant was not entitled to a trial by jury. La. R.S. 14:98; LaC.Cr.P. art. 779.
After reviewing the entire guilty plea proceeding and considering the above jurisprudence, it is clear that the guilty plea transcript offered by the State at the trial of this matter was sufficient to prove a knowing and express waiver by | ¡¿Defendant of his Boykin rights, including his right to a bench trial and the right to *1284 confront witnesses. The trial court was correct, therefore, in its decision to allow this conviction to be used to enhance Defendant’s charge in this matter. These assignments are without merit.
Assignment of Error # k: The trial court erred in failing to grant a mistrial once proof was presented that several of the jurors were asleep and/or inattentive.
On Wednesday, February 14, 1996, Defendant entered an objection concerning the conduct of the jury. He sought either a mistrial or the removal of certain jurors, complaining that they were sleeping during parts of the trial. The trial court then allowed Defendant to call several witnesses to testify concerning their observations of sleeping jurors.
The first witness was Deputy Penny Finley, the courtroom deputy, for the course of this trial. She was asked if she had been able to observe the jurors during the trial. She said that she could and was then asked if she had seen any members of the jury sleeping. Her response was that the ones that she could see were sleepy, but that she never saw any of the jurors actually fall asleep.
Defendant’s mother, Francis Reno, testified that she was present for the entire trial and observed the black female juror sleeping. She specifically stated that this juror had her eyes shut and would nod or drop her head on occasion. Ms. Reno also saw an older gray-haired man with his head resting against the wall. In her opinion, he was also sleeping. Finally, Ms. Reno also noticed a black gentleman juror with his eyes closed.
Defendant’s sister, Carolyn Ellis, also testified that she saw a black male juror, an older white male juror in the back row and the black female juror sleeping during the trial. Ms. Ellis was not sure of the time periods in which she observed this behavior, but believed that the black female juror closed her eyes for 6-10 minutes. She testified that she told her mother about this behavior, but no one else.
16Another of Defendant’s sisters, Geraldine Brady, testified that she too had seen the black female juror sleeping before the lunch break on February 18. On that same date, she saw a white male juror with his head propped up against the wall for 10-16 minutes before the lunch break and a black male juror asleep for 10 minutes. Ms. Brady admitted that she informed Defendant’s counsel and that he seemed surprised because he did not see anyone sleeping during the trial. She further testified that she also told her friend Rhonda who was sitting next to her during the trial.
Rhonda McQuillin, Defendant’s paramour, testified that she was present for all of the trial and saw the black female juror fall asleep on February 13, both before and after lunch. In fact, Ms. McQuillin stated that this black female juror was asleep for “practically the whole court.”
Ms. McQuillin stated that, after lunch on February 13, she observed four other jurors sleeping. Besides the same black female juror that she saw in the morning, she saw a white male in the back row with his head propped in his hands, an older white male with his head resting against the wall, an overweight black female and a black male in the front row. Ms. McQuil-lin opined that three out of the four black jurors had been asleep for the majority of the trial and were particularly inattentive. She stated that she told Defendant, Geraldine Brady, Defendant’s counsel and Deputy Finley her observations.
The final witness was Frank Spader, a friend of Defendant’s. Mr. Spader was present for the February 13 morning testimony. He stated that the only juror he saw sleeping was the same black female everyone else had testified about and that she had been asleep all morning.
Following this testimony, the trial court denied the motion for mistrial and denied Defendant’s motion to remove the jurors that were allegedly sleeping. Instead, the trial court commented as follows:
|7Well let me say for the record that I’ve observed this jury and I have seen peo- *1285 pie asleep on juries in the past. In my view of this jury they’ve been normal to this point. If I started excusing everyone that closed their eyes or nodded on a jury panel we would finish cases with half juries and so forth, it would be ridiculous, and I did observe Mr. Taylor with his eyes closed, I did observe the lady on the end nodding with her eyes closed but I could not conclude that either of these jurors was asleep. They were certainly — they may have been inattentive, I’m not positive that they were inattentive at that point, but they — I can’t conclude that they were asleep. For me to ■ listen to the testimony of someone like Ms. McQuillin who said that five people and maybe a sixth person was asleep on this jury is just fantastic to me and I would not accept that. I do not believe it. I would decline to excuse any of these jurors. Now, normally when something like this is pointed out to me during the trial I observe those jurors thereafter with extra close scrutiny and' should I observe any of these people in a condition that I think is asleep I’m going to excuse them without any motion or anything else from anyone. But normally also I would probably bring these jurors back and not draw any great deal of attention to what’s been going on but I would tell them that, that this case was some what monotonous at times yesterday but I’m going to ask them to give a special attention today to what’s going on and admonish them to do that, so that thereafter if they start nodding or closing their eyes I would — after that kind of an admonition I would probably presume the worse maybe instead of presuming what’s normal. By the way, I closed my eyes at times during this trial too and a lot of other jurors up there closed their eyes but I definitely was not asleep and I don’t believe those jurors on the back were asleep either.
Defendant agreed that the judge should give the jury an admonition, but objected to the trial court’s failure to remove the black female juror. Following the return of the jury, the trial court gave the following admonition before testimony resumed:
Trial Court: Ladies and gentlemen, have you noticed that it’s a bit cooler than probably normal in the courtroom.
The Jury: Yes.
Trial Court: You’ve noticed that. I try to keep it cool because I personally can stay alert a little bit better and I don’t have the trouble — I don’t have any trouble staying alert as long as it’s a little bit cool. Once it starts getting hot and so forth I sometimes get drowsy and I’m afraid probably y’all might do the same thing if it would get hot and stuffy in this Courtroom, so I’m going to ask y’all hr — this trial is winding down and it’s getting close to the end, so I’m going to ask y’all to try to stay alert and let’s go ahead and finish this case hopefully here in the next hour or two and then y’all can go back and deliberate at that point. Okay?
|sThe controlling case on the issue of replacing sleeping jurors is State v. Cass, 356 So.2d 396 (La.1977). In Cass, the trial court removed a juror because he had fallen asleep and the trial court claimed that it believed he was doing so because he was ill. The juror was replaced by an alternate. The defendant objected to the removal of the juror and asked for a mistrial, which the trial court denied. The supreme court found that the trial court’s decision to remove thé juror was erroneous and reversed the defendant’s conviction on that basis, remanding the case for a new trial.
In Cass, the court determined that, even if the juror in question did briefly doze off, such was not per se proof of inability to perform, or any character of disqualification. Thus, there would be no legal cause for removing him. Had the juror been shown to have been sleeping through a substantial part of the trial or had he been unable to stay awake despite warnings or efforts to wake him, and had the defendant and the state been afforded an opportunity to explore on the record the juror’s inabili *1286 ty to perform on this account, the court would be presented with a substantially different question for review.
We find that the trial court did not err in failing to summarily remove the black female juror under the circumstances and in refusing Defendant’s motion for a mistrial. Further, if there was any error caused by denying Defendant’s request for a mistrial, the trial judge gave the jurors an admonition which apparently cured the situation. La.C.Cr.P. art. 771. Thus, under the circumstances presented in the case sub judice, the assignment has no merit.

CONCLUSION

For the foregoing reasons, the conviction and sentence of Defendant, Kenneth Leon Brady, are hereby affirmed.
AFFIRMED.

. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).