NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-1267

STATE OF LOUISIANA

VERSUS

CLAYTON JAMES GREENE

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 03K2177B
HONORABLE ELLIS J. DAIGLE, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.

AFFIRMED.

Hon. Earl B. Taylor
District Attorney, 27th J.D.C.
Alisa Ardoin Gothreaux
Assistant District Attorney, 27th JDC
P. O. Drawer 1968
Opelousas, LA 70571-1968
(337) 948-0551
Counsel for State-Appellee:
State of Louisiana

Harold Dewey Register Jr.
Attorney at Law
P. O. Box 80214
Lafayette, LA 70598-0214
(337) 921-6644
Counsel for Defendant-Appellant:
Clayton James Greene

**Pickett, Judge.**

## FACTS

The state alleged that on May 24, 2003 at approximately 4:00 a.m., the defendant, Clayton James Greene, forced his way into the home of Wilma Sam. The defendant then beat Ms. Sam and John Oakley. The defendant subsequently tied Ms. Sam's legs, brought her to his truck, and took her to a tractor dealership. Ms. Sam begged the defendant not to kill her and he subsequently took her back home. Both Ms. Sam and Mr. Oakley sustained serious injuries as a result of the defendant's actions.

On August 27, 2003, the defendant, Clayton James Greene, was indicted for two counts of attempted second degree murder, a violation of La.R.S. 14:27 and La.R.S. 14:30.1, and one count of second degree kidnapping, a violation of La.R.S. 14:44.1. The defendant entered a written plea of not guilty on November 14, 2003.

Jury selection began on October 11, 2005, and the jury returned a verdict on October 19, 2005 of guilty of two counts of the responsive verdict of attempted manslaughter, a violation of La.R.S. 14:27 and La.R.S. 14:31, and one count of second degree kidnapping. On February 10, 2006, the defendant was sentenced to twenty years at hard labor on each count of attempted manslaughter and to twenty-five years at hard labor, of which the first ten years are to be served without benefit of probation, parole, or suspension of sentence, for second degree kidnapping. All sentences were ordered to run concurrently.

A Motion to Reconsider Sentence was filed on March 8, 2006 and denied on April 25, 2006. A Motion for Appeal and Designation of Record was filed on April 24, 2006.

1

The defendant is now before this court asserting five assignments of error. Therein, the defendant contends the jury pool was tainted during voir dire and, as a result, the defendant did not receive a fair and impartial jury; the trial court erred by not granting a motion to adjourn because of the lateness in the hour, in violation of the defendant's constitutionally afforded right to a fair and impartial trial; the trial court erred by failing to sequester witnesses, in violation of the defendant's constitutionally protected right to a fair and impartial trial; the trial court erred in denying a motion for mistrial based upon exposure of the jurors to other crimes evidence; and the sentence imposed by the trial court was cruel, unusual and excessive.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, the defendant contends the jury pool was tainted during voir dire and, as a result, he did not receive a fair and impartial trial, in violation of the Sixth Amendment to the United States Constitution.

Jury selection in the case at bar began on October 11, 2005. The court minutes indicate that prior to the commencement of voir dire, defense counsel moved to have all potential jurors removed from the courtroom during questioning and the trial court overruled the motion.

There is no transcript of jury selection in the record. Attorney Harold Register Jr., represented the defendant at trial and filed a Designation of Record designating

2

the "entire transcript of each hearing herein and all of the pleadings for inclusion in the appellate record." Additionally, Mr. Register filed a Motion for Transcript on the same day he filed the Designation of Record. In the Motion for Transcript, Mr. Register indicated he intended to appeal the decision of the trial court and was in need of "the transcript of Trial (October 19, 2005), Sentencing (February 10, 2006) and Motion to Reconsider Sentence (hearing April 13, 2006)."

Mr. Register also represents the defendant on appeal. Before this court, defense counsel argues the following:

> allowing the potential jurors to remain in the courtroom while other potential witness[es] were being questioned gave the jurors the opportunity to formulate in their minds a response because they were aware of the nature of the questioning. Thus, the jurors were not impartial and did not render an impartial response as to the questions that were presented to them[.]

We cannot determine the basis of Mr. Register's objection from the minutes of court. Mr. Register has not requested that the appellate record be supplemented with a transcript of jury selection or the portion thereof that is pertinent to this assignment of error. As we cannot determine whether the basis for the defendant's assignment of error was first argued in the trial court, we have not addressed this issue pursuant to Uniform Rules—Courts of Appeal, Rule 1-3.

## ASSIGNMENT OF ERROR NO. 2

In his second assignment of error, the defendant contends the trial court erred by not granting his motion to adjourn because of the lateness in the hour, in violation of his constitutionally afforded right to a fair and impartial trial, according to La.Const. art. 1, § 16.

The trial court began to instruct the jury at 7:18 p.m. After the jury had been instructed and the bailiff delivered the verdict sheets to the jury, defense counsel

3

sought to have the proceedings adjourned and jury deliberations commenced the following day. The trial court denied the motion and the jury retired to deliberate at 7:54 p.m. The jury returned its verdicts at 10:55 p.m.

The defendant asserts that an objection was entered on the record during trial on October 19, 2005, due to the lateness of the hour and upon observing several jurors sleeping or dozing during various stages of trial. The defendant further asserts that the trial court wished to finish the trial no matter how long it took. The defendant contends that the trial court, by not allowing the adjournment of court, deprived him of his protected constitutional right to a fair and impartial trial. The defendant further contends the exhausted and pressed for time jurors could not fairly or impartially return a verdict, thus depriving him of a proper jury.

In support his argument, the defendant cites *State v. Burns*, 35,267 (La.App. 2 Cir. 10/31/01), 800 So.2d 106. Therein, the second circuit found the removal of and replacement of a juror who was allegedly sleeping was not warranted, as neither the state nor the defense moved to have the juror removed or moved for mistrial, and the only indication that the juror was sleeping was the trial court's comments before it summarily dismissed the juror. The second circuit cited *State v. Cass*, 356 So.2d 396 (La.1977), wherein the supreme court stated the following: "[t]he right of the accused to have a juror selected by him try the case is a substantial one, the improper deprivation of which is prejudicial. The doctrine of harmless error is, therefore, inapplicable." *Id*. at 398 (Citations omitted). The court in *Burns* then reversed the defendant's conviction and sentence and remand the matter for a new trial.

The case at bar is distinguishable from the cases cited by the defendant, in that a juror was not removed in the case at bar. The defendant did not move to have the

4

sleeping or dozing jurors removed or replaced. Accordingly, any issue regarding this matter was waived, as the defendant did not timely object. La.Code Crim.P. art. 841. We will, however, address the defendant's complaint regarding the time of day the jury began deliberations. Pursuant to La.Code Crim.P. art. 17:

> A court possesses inherently all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, including authority to issue such writs and orders as may be necessary or proper in aid of its jurisdiction. It has the duty to require that criminal proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done. A court has the power to punish for contempt.

In *State v. Wright*, 445 So.2d 1198 (La.1984), the defendant argued he was deprived of his right to a fair trial because of the long hours of testimony during the two-day trial and the retirement of the jury at 11:00 p.m. until their verdict was returned at 3:00 a.m. The supreme court noted that it found nothing unusual in retiring the jury late in the evening, rather than waiting until the following day. Additionally, the court remarked that the four hours spent in deliberation reassured it that the jury's verdict was not unduly hurried.

In *State v. Currie*, 00-2284, p. 16 (La.App. 4 Cir. 2/13/02), 812 So.2d 128, 137, *writ denied*, 02-786 (La. 11/15/02), 812 So.2d 128, the fourth circuit noted the following:

> [A] trial that runs from 9:50 a.m. until 6:20 a.m. is unprecedented. Deliberations have run into the wee hours of the morning before, *see State v. Chevalier*, 458 So.2d 507 (La.App. 4 Cir.1984) (deliberations from 9:54 p.m. until 1:05 a.m.); *State v. Mack*, 435 So.2d 557 (La.App. 1 Cir.1983) (deliberations from 10:40 p.m. to 1:50 a.m.); *State v. Wright*, 445 So.2d 1198 (La.1984) (deliberations from 11:00 p.m. until 3:00 a.m.), but a trial that lasted on its third day almost twenty hours merits our close scrutiny.

Based on Article 17 and the cases cited herein, we find the trial court did not abuse its discretion in allowing the jury to begin deliberations at 7:54 p.m.

Additionally, the fact that the jury deliberated for approximately three hours demonstrates that the jury was not hurried in its deliberations. Accordingly, this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NO. 3

In his third assignment of error, the defendant contends the trial court erred by failing to sequester witnesses, in violation of his constitutionally protected right to a fair and impartial trial, according to La.Const. art. 1, § 16.

At trial, the state moved to have the two victims in the case at bar and the designated case agent exempted from sequestration. At that time, the defendant objected. The defendant later made the following argument to the trial court:

> I certainly recognize and appreciate the significance of Code of Evidence Article 615 (B). My basic argument, even though it indicates that a victim can in fact remain in the courtroom, we would simply argue on these grounds, that such an article is unconstitutional, and of course, reserve our right to advance it on appeal.

The defendant argues that the witnesses the trial court did not sequester would be influenced and prejudiced by the testimony of other witnesses in the matter. The defendant then challenges the constitutionality of the La.Code Evid. Art. 615(B). The defendant further asserts that it was a direct violation of his right to a fair and impartial trial for the trial court to afford the victims and the case agent protection under La.Code Evid. art. 615(B)(4) and allow their partial testimony into the record.

La.Code Evid. art. 615 provides, in pertinent part, as follows:

> A. As a matter of right. On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion.

B. Exceptions.  This Article does not authorize exclusion of any of the following:

> (1) A party who is a natural person.
> (2) A single officer or single employee of a party which is not a natural person designated as its representative or case agent by its attorney.
> (3) A person whose presence is shown by a party to be essential to the presentation of his cause such as an expert.
> (4) The victim of the offense or the family of the victim.

In *State v. Chester*, 97-2790, p. 8 (La. 12/1/98), 724 So.2d 1276, 1282, *cert. denied*, 528 U.S. 826, 120 S.Ct. 75 (1999), the supreme court stated that "[t]he purpose of the sequestration article is to prevent witnesses from being influenced by the testimony of earlier witnesses.  *State v. Stewart*, 387 So.2d 1103 (La.1980)."

In *State v. Schoening*, 00-903, p. 3 (La. 10/17/00), 770 So.2d 762, 764, the supreme court discussed constitutional challenges as follows:

> Legislative enactments are presumed valid and their constitutionality should be upheld whenever possible.  *State v. Caruso*, 98-1415, p. 1 (La.3/2/99), 733 So.2d 1169, 1170 (citing *State v. Griffin*, 495 So.2d 1306 (La.1986)).  Therefore, courts are generally reluctant to address the constitutionality of legislation unless necessitated by the particular case and issue before them. *Blanchard v. State, Through Parks and Recreation Com'n*, 96-0053, p. 2 (La.5/21/96), 673 So.2d 1000, 1002 (citing *Matherne v. Gray Ins. Co.*, 95-0975 (La.10/16/95), 661 So.2d 432).  The general rule is that a court should not reach the question of a statute's constitutionality when its possible unconstitutionality has not been placed at issue by one of the parties in a pleading.  *Board of Com'rs of Orleans Levee Dist. v. Connick*, 94-3161, p. 6 (La.3/9/95), 654 So.2d 1073, 1076;  *Vallo v. Gayle Oil Co., Inc.*, 94-1238, p. 8 (La.11/30/94), 646 So.2d 859, 864-65;  *Lemire v. New Orleans Public Service, Inc.*, 458 So.2d 1308, 1311 (La.1984).  This court has stated that, while there is no single required procedure or type of proceeding for attacking a statute's constitutionality, "the long-standing jurisprudential rule of law is . . . the unconstitutionality of a statute must be specially pleaded and the grounds for the claim particularized."  *Vallo*, 646 So.2d at 864-65.

The defendant failed to sufficiently particularize the basis for the unconstitutionality of Article 615 in his argument to the trial court and did not contend

his rights were affected. Hence, the defendant failed to uphold his burden of proof regarding the constitutionality of Article 615. Further, the defendant failed to assert or give examples of how the testimony of the witnesses at issue was influenced or prejudiced by that of other witnesses. Therefore, he has not sufficiently particularized the basis for his argument. Accordingly, this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NO. 4

In his fourth assignment of error, the defendant contends the trial court improperly denied his motion for mistrial, which was based upon exposure of the jurors to evidence of other crimes, in violation of La.Const. art. 1, § 16.

The taped statement of the victim, Wilma Sam, was played to the jury. After the tape was played, the following exchange occurred:

> MR. REGISTER: I object again, Your Honor.
>
> THE COURT: Okay, as to the objection, I'm going to sustain the objection as to that portion of the tape. I'll instruct the jury to disregard those comments made by Ms. Sam concerning the reasons why they were not getting along.

Defense counsel then moved for a mistrial "based upon what was said on that particular tape." Following this exchange, a conference was held in chambers.

During the conference, defense counsel gave the following reasons for his motion for mistrial:

> When the tape was played, certain information was mentioned concerning uncharged misconduct, and particularly the fact about the defendant being a drug user and what have you, and we feel that there's a separate proceeding to try to get in uncharged misconduct, if that was the purpose of offering the tape. We feel that, based upon the fact that that tape was allowed to be played, the jury heard uncharged misconduct concerning my particular client, we feel that an admonition to the jury would not be sufficient and we feel that it's only appropriate, at this point, to move for a mistrial. The Assistant D.A., by having that tape in her posession, was fully aware of the contents of what was on that tape or should have been fully aware of what was on that tape, and to allow that tape to come in, to

8

get in uncharged misconduct, we feel that there's no way that my client can have a fair trial at this point.

The state insisted that defense counsel had received a copy of the tape. The state then indicated that Ms. Sam stated the defendant was drinking and doing drugs and it felt an instruction to the jury would be sufficient. The trial court subsequently denied the motion and stated that an admonishment would be given to the jury.

The defendant asserts a mistrial should have been granted because prejudicial evidence of past crimes was introduced in the presence of the jury. The defendant does not set forth, in brief to this court or in his argument to the trial court, what other crimes evidence was introduced. As noted above, the defendant failed, in brief to this court, to point out what evidence of other crimes was presented to the jury. Therefore, we find this assignment of error has not been properly briefed and should not be considered by this court. Uniform Rules—Courts of Appeal, Rule 2-12.4.

### ASSIGNMENT OF ERROR NO. 5

In his fifth assignment of error, the defendant contends the sentences imposed by the trial court were cruel, unusual, and excessive, in violation of La.Const. art. 1, § 20.

> In *State v. Cook*, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996), the supreme court held that when a defendant claims a sentence is excessive "[t]he only relevant question on review . . . [is] 'whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.' *State v. Humphrey*, 445 So.2d 1155, 1165 (La.1984)."

*State v. Robinson*, 05-633, p. 8 (La.App. 3 Cir. 12/30/05), 918 So.2d 1151, 1156.

The defendant was convicted of two counts of attempted manslaughter and one count of second degree kidnapping. Pursuant to La.R.S. 14:27 and 14:31, the maximum sentence for attempted manslaughter is not more than twenty years

imprisonment. Additionally, pursuant to La.R.S. 14:44.1, the sentence for second

degree kidnapping is not less than five nor more than forty years and at least two years

of the sentence imposed shall be without benefit of parole, probation, or suspension of

sentence. The defendant was sentenced to twenty years at hard labor on each count of

attempted manslaughter and to twenty-five years at hard labor, of which the first ten

years are to be served without benefit of probation, parole, or suspension of sentence,

for second degree kidnapping. All sentences were ordered to run concurrently.

The trial court made the following comments at the sentencing hearing:

The defendant has filed in the record herein forty-three letters from
friends. Let the record reflect that this Court has read all of these letters. .
. . At the time of these crimes, the defendant was twenty years younger
than the female victim, Wilma Sam, and ten years younger than the
victim, John Oakley, who was also disabled and unable to defend himself.
The injuries sustained by Ms. Sam and by the defendant, who used a large
heavy stick to beat her, were two broken arms, broken jaw, broken sinus
cavity. She also had a large laceration down the center of her forehead
and on the right side of her face. Her throat was bruised and swollen as
was most of her upper body, then the defendant tied her legs, threw her in
a truck and drove her to the John Deere location, all while the victim
pleaded and begged for her life. As to Mr. Oakley, he suffered a
concussion from the blows to his head, by the defendant using the stick
and furthermore, standing on Mr. Oakley's head. Mr. Oakley played dead
to avoid further beatings and from being killed. The victim's impact
statement of Wilma Sam was also considered. The defendant is a first
felony offender, however, he is not eligible for a suspended sentence for
the crime of second degree kidnapping, because the sentence is a hard
labor sentence of not less than five (5) years and no more than forty (40)
years, with at least two (2) years being without benefit of parole,
probation, or suspension of sentence. The defendant has a misdemeanor
conviction of simple battery wherein it was alleged that a .44 caliber
magnum revolver was used by the defendant, which results in a crime
against the person. The defendant, through his Counsel, has indicated that
the defendant was unable to give his version of this incident, and that it
was self-defense by the defendant against the victim. Additionally, the
Pre-Sentence Investigation indicates another matter, related to by defense
Counsel, in that the defendant was charged with an aggravated battery
wherein a baseball bat was used, allegedly used, and the victim's leg was
broken as a result of this. Again, defense Counsel relates that the
defendant did not have an opportunity to address this to the Probation
Officer, and that the defendant has claimed self-defense in that matter.

10

Only by the grace of God, in this matter, neither of the victims died as a result of the vicious beating each received at the hands of the defendant, who used, as stated before, a large heavy stick. Each victim sustained serious, permanent physical and psychological injuries. The defendant is a very dangerous man as evidenced by this criminal history and by heinous crimes he committed in this particular matter . . . This court feels that it has a duty to protect the public from this man. The Court also considered all of the, or the two individuals that testified today in relating that the defendant was, by nature, not a violent person, however, the record does not indicate such. It appears to the Court that there is a pattern of violence with the defendant, which the Court is not quite sure what has triggered that, except in this incident it appears to be that the lady, he had lived with previously, had a gentleman with her on the night of this incident. Considering all of the factors cited herein and that there is an undue risk that during the period of a suspended sentence or probation the defendant would commit another crime, that the defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution, that a lesser sentence would deprecate the seriousness of the defendant's crime, that there are no mitigating circumstances, and even though the defendant today indicated he was remorseful for the events that occurred and the injuries received by these parties, all during the trial of this matter he professed that he was acting in self-defense. In the Pre-Sentence Investigation he continued to indicate that he was acting in self-defense, and of the other matters in this criminal history, he has stated that he was acting in self-defense. The Court does not feel that the defendant is remorseful; or he may be remorseful for the injuries that occurred, but not for the actions that he took at the time.

In his Motion to Reconsider Sentence, the defendant argued that his sentences were excessive and stated that he had two forms of terminal illnesses and was not expected to live long. At the hearing on the motion, the defendant entered the medical records from the St. Landry Parish Sheriff's Department and University Medical Center into evidence and the trial court took the matter under advisement. The motion was subsequently denied.

The defendant argues that there were several mitigating factors the trial court did not consider at sentencing. The defendant points out that he had no prior felony offenses and asserts the state failed to offer proof that would rebut his claim that he acted in self-defense. The defendant also asserts that the pre-sentence investigation

11

report was biased and set forth information about previous altercations. The defendant goes on to allege that the trial court failed to consider the fact that he was sick.

In his Motion to Reconsider Sentence, the defendant alleged only that his sentences were excessive and he was terminally ill. Defense counsel failed to argue that the trial court did not consider mitigating factors at the sentencing hearing. "Failure to . . . include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review." La.Code Crim.P. art. 881.1(E). Accordingly, the defendant waived all claims regarding his allegation that the trial court failed to consider that he was a first felony offender, any issues pertaining to the pre-sentence investigation report, and his allegation that the state failed to produce evidence to prove he did not act in self-defense. Therefore, we will consider only whether the trial court considered the defendant's illnesses at the time it denied the defendant's motion and whether his sentences are excessive.

First, we note that in the denial of the defendant's Motion to Reconsider Sentence, the trial court clearly stated that it considered the defendant's medical records, which comprise approximately two hundred fifty-seven pages. A review of the medical records indicates the defendant is HIV positive and has tuberculosis.

In *State v. deBeche*, 01-1083 (La.App. 3 Cir. 2/6/02), 815 So.2d 1028, *writ denied*, 02-686 (La. 9/13/02), 824 So.2d 1187, the defendant, who had congestive heart failure, contended his health had drastically declined since sentencing and he was terminally ill. This court refused to find his twenty five-year sentence for forcible rape and molestation of a juvenile excessive. In *State v. Thomas*, 556 So.2d 1349 (La.App.

5 Cir.), *writ denied*, 563 So.2d 1151 (La.1990), the court concluded the defendant's sentence of six years for rape and molestation of a juvenile was not excessive despite the defendant's claim that he should be given home incarceration because he was suffering from stomach cancer and would not get necessary treatment if incarcerated. The court noted that if treatment by the Department of Corrections was inadequate the defendant could apply to the court for relief.

Louisiana Revised Statute 15:574.20(A) provides, in pertinent part: "any person sentenced to the custody of the Department of Public Safety and Corrections may, upon referral by the department, be considered for medical parole by the Board of Parole." *See State v. Brown*, 02-1382 (La.App. 3 Cir. 4/2/03), 842 So.2d 1181, *writ denied*, 03-1224 (La. 11/7/03), 857 So.2d 491.

We will now address the defendant's claim that his sentences are excessive. In *State v. Taves*, 03-581 (La. 12/3/03), 861 So.2d 144, the court found the defendant's concurrent sentences of ten years imprisonment for false imprisonment while armed with a dangerous weapon and twenty-five years imprisonment for second degree kidnapping, two years of which were to be served without benefit of parole, probation, or suspension of sentence, were not disproportionate to the offenses. Therefore, the sentences were not excessive. The court noted that the defendant's conduct in holding the victim hostage at gunpoint in their home for one month manifested deliberate cruelty to the victim and the pre-sentence investigation report indicated the victim suffered from post-traumatic stress disorder, that the defendant had a prior felony conviction, and that he had prior misdemeanor convictions for criminal confinement, destruction of property, escape, and theft. The defendant was actually classified as a first felony offender for sentencing purposes. In *State v. Meche*, 95-797 (La.App. 3

13

Cir. 12/6/95), 664 So.2d 828, *writ denied*, 96-493 (La. 5/10/96), 672 So.2d 920, the defendant entered guilty pleas to forcible rape and second degree kidnapping. This court found the twenty-five year sentence for second degree kidnapping was not excessive. The court noted in its reasons for imposition of sentence that it considered the fact the defendant was a first felony offender, but the defendant's use of a gun to kidnap and rape the victim "mandated a sentence that would adequately punish him for these crimes." *Id.* at 831. Additionally, the court noted the defendant was originally charged with aggravated rape, second degree kidnapping, and aggravated crimes against nature, which potentially exposed him to a maximum life sentence plus fifty-five years without the benefit of probation, parole, or suspension of sentence, and the defendant received concurrent sentences.

We find the defendant is a first felony offender who the trial court considered a very dangerous man who displayed a pattern of violence. He beat the victims with a stick, one of whom was disabled, and forcibly carried the other victim from the scene. Additionally, the victims sustained serious injuries as a result of the defendant's actions. Based on the cases cited herein and the facts and circumstances of this case, we find the defendant's twenty-five year sentence for second degree kidnapping is not excessive. As the defendant's two twenty year sentences for attempted manslaughter were ordered to run concurrently with his sentence for second degree kidnapping, we find the sentences for attempted manslaughter are not excessive. For the reasons set forth herein, this assignment of error lacks merit.

## **CONCLUSION**

The defendant's convictions and sentences are affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Rule 2-16.3, Uniform Rules, Courts of Appeal.

15