# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 13-1107


STATE OF LOUISIANA

VERSUS

RONALD PETE


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, DOCKET NO. 93278-FB
HONORABLE THOMAS F. FUSELIER, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\***


JAMES T. GENOVESE
JUDGE


**\*\*\*\*\*\*\*\*\***


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and James T. Genovese, Judges.


**AFFIRMED WITH INSTRUCTIONS.**

Edward K. Bauman
Louisiana Appellate Project
Post Office Box 1641
Lake Charles, Louisiana 70602
(337) 491-0570
COUNSEL FOR DEFENDANT/APPELLANT:
    Ronald Pete


Ronald Pete
DOC #523455
Pine Prairie Correctional Center
Post Office Box 650
Pine Prairie, Louisiana 70576
    In Proper Person

**Trent Brignac**
**District Attorney—Thirteenth Judicial District**
**J. Gregory Vidrine**
**Assistant District Attorney**
**Post Office Drawer 780**
**Ville Platte, Louisiana  70586**
**(337) 363-3438**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**GENOVESE, Judge.**

In this criminal case, Defendant, Ronald Pete, appeals his convictions for aggravated burglary, armed robbery, and possession of a firearm by a convicted felon. Defendant's appellate counsel alleges insufficiency of the evidence and trial court error in substituting an alternate juror for an original juror. Defendant, pro se, has filed a brief, alleging an incomplete record and double jeopardy. For the following reasons, we affirm Defendant's convictions with instructions.

## FACTS AND PROCEDURAL HISTORY

The victim in this case, Mr. Roy Delafosse, alleges that on June 20, 2012, Defendant entered his home, uninvited, demanded money while holding a knife to his chest, and took his wallet, cell phone, and antique pistol. Defendant was later arrested and charged by bill of information with one count each of aggravated burglary, a violation of La.R.S. 14:60; armed robbery, a violation of La.R.S. 14:64; and, possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1.

Subsequent to trial by jury, Defendant was found guilty as charged. He was sentenced to fifteen years at hard labor on his conviction for aggravated burglary; twenty-five years at hard labor without the benefit of parole, probation, or suspension of sentence on his conviction for armed robbery; and, fifteen years at hard labor without the benefit of probation, parole, or suspension of sentence on his conviction for possession of a firearm by a convicted felon. The trial court ordered Defendant's sentences to run concurrently. Defendant has perfected a timely appeal, alleging the following assignments of error through his appellate counsel and also pro se.

## ASSIGNMENTS OF ERROR

*By Defendant's Appellate Counsel:*

    I. The [t]rial [c]ourt erred in removing Juror Hayden Joubert prior to deliberations and replacing her with an alternate juror.

    II. The evidence adduced at trial was insufficient to support the convictions.

*By Defendant Pro Se (listed as Issues):*

1) Whether the fifty-five <u>inaudibles</u> in the trial transcript in violation of the Louisiana Code of Criminal Procedure (La.C.Cr.P.) Article 843 constituted plain error or deprived the defendant of his "right of judicial review based upon a complete record of all evidence upon which the judgment is based." La. Const. Art. 1, § 19[.]

2) Whether using the same evidence to establish a required element of the crime in both the Aggravated Burglary and the Armed Robbery charge constituted double jeopardy[.]

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we note that there is an error patent concerning Defendant's sentence for possession of a firearm by a convicted felon and that the court minutes of sentencing are in need of correction.

Regarding possession of a firearm by a convicted felon, La.R.S. 14:95.1(A) requires the court to impose a fine of not less than one thousand dollars, nor more than five thousand dollars. This mandatory fine was not imposed by the trial court for Defendant's conviction of possession of a firearm by a convicted felon, thereby rendering the sentence illegally lenient. However, we do not address this error patent as it was not raised as an assignment of error.

Next, we note that there is a discrepancy between the transcript and the court minutes of sentencing regarding Defendant's sentence for armed robbery. The transcript indicates that Defendant's twenty-five year sentence for armed robbery was imposed without benefit of parole, probation, or suspension of sentence, but the court minutes do not reflect the restriction of benefits. "[I]t is well settled that when the minutes and the transcript conflict, the transcript prevails." *State v. Wommack*, 00-137, p. 4 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, 369, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62. Accordingly, we instruct the trial court to correct the sentencing minutes to reflect that Defendant's sentence for armed robbery is to be served without these benefits. *See State v. Clayton*, 10-1303 (La.App. 3 Cir. 5/4/11), 64 So.3d 418, *writ denied*, 11-1015 (La. 11/4/11), 75 So.3d 923; *State v. Hurst*, 10-1204 (La.App. 3 Cir. 4/13/11), 62 So.3d 327, *writ denied*, 11-975 (La. 10/21/11), 73 So.3d 383.

## ASSIGNMENT OF ERROR NUMBER TWO

In this assignment of error, Defendant alleges insufficiency of the evidence. This assignment will be addressed first because, in the event there is merit to this assignment, Defendant may be entitled to an acquittal of the convictions. Accordingly, the remaining claim would be moot. *Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970 (1981); *State v. Hearold*, 603 So.2d 731 (La.1992).

Defendant was convicted exclusively on the testimonies of the victim, Mr. Delafosse, and of Phyllis Serie, who was alleged to have been Defendant's accomplice in the burglary and armed robbery of Mr. Delafosse. However, Defendant argues that both of these witnesses' testimonies were so incredible that they cannot be deemed as sufficient evidence to establish his guilt beyond a reasonable doubt. With regard to sufficiency of the evidence, this court set forth

3

the standard to be used in *State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See King*, 436 So.2d 559, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).

Phyllis Serie testified that her father lived next door to Brittany Fontenot, Defendant's girlfriend and mother of his son, in Ville Platte, Louisiana. She stated that on the day of the robbery, she was at her father's house, drinking with her father and Defendant. Eventually, Defendant and Ms. Serie went next door to sit on Ms. Fontenot's porch and began to discuss the possibility of robbing the victim. She stated that Defendant wanted her to seduce the victim to get money for drugs. She declined at that time, but later went to the victim's house and asked him for money. Mr. Delafosse refused to give her money. She then went back to Defendant's house. Ms. Serie testified that she had been having sex with the victim for years and that she agreed to call the victim later in the evening and tell him she was just around the corner and to leave the front door open. She explained that she knew Mr. Delafosse had money because he declined to give her money the first time she asked, saying that he had to pay his bills first.

Ms. Serie testified that around 10:00 or 11:00 p.m., Defendant, dressed in black jeans and a red and black flannel shirt with a black ski mask in hand, left to go to the victim's house, which was just a few blocks away. She stayed behind

because Defendant had been babysitting Ms. Fontenot's children, and they were asleep. About ten minutes later, Defendant came running back through Hope Park. He had the victim's wallet, cell phone, and antique .38 revolver. Ms. Serie testified that she noticed a knife in his jeans' pocket that was poking out of the pocket through a hole. At trial, she identified the black jeans with the hole in the pocket, which had been later located in Ms. Fontenot's house. She further stated that she knew the cell phone belonged to the victim because, when she looked at it, there was a missed call from his cousin in California whom he spoke with often.

Ms. Serie agreed that she initially told the police that the shirt Defendant was wearing was a "blue green turquoise shirt[,]" but explained that it was dark when he left the house and that she was uncertain of the exact color because he had taken it off before they went into the house to split the money. However, in open court, she identified the shirt located with the black pants as the shirt Defendant was wearing the night of the robbery.

She said that when Defendant returned, he described the robbery to her. He told her that he had put the knife to the victim's throat and demanded money. As he left the house, the victim yelled after him that he was going to get him. Ms. Serie further testified that Defendant gave her about a hundred and twenty-four dollars from the wallet. She stated that she took her share of the money and purchased drugs with it and that she then went to a friend's house to "chill." She stated that Defendant called her about forty times early in the morning, using the victim's cell phone. She further stated that at that time her phone number was 831-0798, that he had also called Ms. Fontenot with the phone, and that Ms. Fontenot's phone number at that time was 532-4076.

5

Ms. Serie admitted she was addicted to painkillers and that she had spent time in prison for theft and unauthorized use of an access card. She stated that she decided to confess to the police because she needed to turn her life around and said she never wanted to hurt the victim. She acknowledged that she had been charged with armed robbery and understood that her testimony at Defendant's trial essentially convicted her. She further testified that after Defendant was arrested, he called her from jail and threatened her and her family.

Ms. Serie also admitted that she had sex with men and received money from them, but denied that she was a prostitute. Although she denied that she had been promised anything for her testimony, she stated that Detective Nathaniel Savoy, an officer with the Ville Platte Police Department, had said he would help her. She also denied being a confidential informant for the detective.

Mr. Delafosse testified that around 10:00 p.m., he received a call from Ms. Serie asking if she could bathe at his house. When he agreed, she requested that he leave the front door open. He then talked on the phone to his cousin in California and, shortly thereafter, a tall, skinny, black man entered his house uninvited. The man wore black pants, a red and black plaid flannel shirt, and a ski mask. He was armed with a knife, which he pressed to Mr. Delafosse's chest, and demanded money. When he said he did not have any, the man reached under a pillow on the couch where Mr. Delafosse had stashed his wallet and pulled it out. He then took Mr. Delafosse's cell phone and grabbed his antique pistol off the floor. He said that the robber pointed the gun at his head and pulled the trigger twice, but the gun was not loaded.

In court, Mr. Delafosse identified the red and black plaid flannel shirt as the shirt the robber wore. He also identified Defendant as the robber; however, when

asked how he could identify the robber since the robber was wearing a mask, he claimed that he recognized his voice. He described Defendant as speaking with a Lake Charles accent as opposed to a Ville Platte accent. He said that he had seen Defendant earlier in the day, walking back and forth in front of his house, and that he had seen Defendant and Ms. Serie standing on the street corner. However, Mr. Delafosse admitted that he never told the police on the two occasions that he gave them statements that he had recognized Defendant as the robber by his voice, even after he told the police that Ms. Serie had set him up for the robbery.

Mr. Delafosse testified that he never got his phone back, but he identified phone records of the calls made on the phone in the early morning of July 1, 2012, after the robbery. He identified Ms. Serie's phone number as outgoing calls made forty-five times after the time of the robbery as well as some incoming calls from her phone. He further identified Ms. Fontenot's phone number, which was shown twice as outgoing calls.

Detective Charles Hall, an officer with the Ville Platte Police Department, testified that after Mr. Delafosse told him Ms. Serie had something to do with the robbery, he brought her down to the police station and took a statement from her. Based on her statement, a search warrant was obtained for Ms. Fontenot's residence. He testified that a pair of black pants and a flannel shirt were found stuffed in a crawl space in the bathroom. The wallet, cell phone, and antique pistol were never located. Detective Hall also stated that he had used Ms. Serie in the past as a confidential informant and had found the information she brought him to be reliable.

Finally, Defendant testified on his own behalf. He denied that he lived at Ms. Fontenot's house in Ville Platte. He stated that he visited with her often in

7

order to see his son. He explained that Ms. Serie had "messed" with him when she accused him of touching her inappropriately and had gotten him in trouble with his girlfriend. He further stated that Ms. Fontenot and Ms. Serie had apparently remained friends and that Ms. Serie had told him she was going to get him anyway.

Defendant admitted that he had an armed robbery conviction in 2007. He denied robbing Mr. Delafosse. He stated that he was watching the kids the night of robbery and that he had been there on this particular visit for about a week. He denied that the pants and flannel shirt were his, indicating that they were some other man's clothes. He further stated that Ms. Serie had access to Ms. Fontenot's house and that she set him up.

In brief, Defendant argues that there was no evidence that the clothes found in the crawl space in the bathroom were his and that no DNA was extracted from the items. He argues that Ms. Serie, a convicted felon, drug addict, and prostitute, is not to be believed. He further argues that Mr. Delafosse's testimony at trial that he recognized his voice was not to be believed since he never told anyone he recognized the robber's voice until trial. Also, in brief, Defendant acknowledges that credibility is an issue in this case and correctly notes that credibility issues are normally not reviewed on appeal.

In *State v. Lafitte*, 10-1253, pp. 18-19 (La.App. 3 Cir. 5/11/11) 63 So.3d 1195, 1206-07, *writ denied*, 11-1230 (La. 12/2/11), 76 So.3d 1174, this court addressed the issue of credibility of a witness on appellate review, stating:

> Defendant argues that the trial court should have believed the testimonies given by him and his psychologists over the account given by the victim in the matter. It is not the function of the appellate court to reassess credibility of witnesses or reweigh evidence:
>
> > [The supreme court has] repeatedly cautioned that due process, rational fact finder test of *Jackson v. Virginia,*

8

443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), does not permit a reviewing court to substitute its own appreciation of the evidence for that of the fact finder or to second guess the credibility determinations of the fact finder necessary to render an honest verdict. A reviewing court may intrude on the plenary discretion of the fact finder "only to the extent necessary to guarantee the fundamental protection of due process of law."

*State v. Calloway*, 07-2306, p. 10 (La.1/21/09), 1 So.3d 417, 422 (citations omitted). "The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness[.]" *State v. Higgins*, 03-1980, p. 17 (La.4/1/05), 898 So.2d 1219, 1232, *cert. denied*, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). "Credibility determinations are within the sound discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence." *State v. Marshall*, 04-3139, p. 9 (La.11/29/06), 943 So.2d 362, 369, *cert. denied*, 552 U.S. 905, 128 S.Ct. 239, 169 L.Ed.2d 179 (2007).

Furthermore, considering the fact that Ms. Serie was an accomplice of Defendant, this court has noted:

Regarding the potential jury instruction, our brethren on the Fifth Circuit have stated: "While the testimony of a co-defendant in a crime should be received with a great deal of caution, a jury or judge may nonetheless convict on this testimony if it is deemed sufficient. *State v. May*, 339 So.2d 764, 775 (La.1976)." *State v. Addison*, 00-1730, p. 8 (La.App 5 Cir. 5/16/01), 788 So.2d 608, 614. The footnote to this passage elaborates:

See also: *State v. Howard*, 98-0064 (La.4/23/99), 751 So.2d 783, 801, *quoting State v. Schaffner*, 398 So.2d 1032, 1035 (La.1981), where it was held that when the state's case turns upon the uncorroborated testimony of an accomplice, the trial judge should instruct the jury to treat such testimony with great caution. However, when the accomplice's testimony is corroborated by other evidence, such language is not required.

*Id*. at 614, n. 4.

*State v. Zeno*, 01-1340, pp. 9-10 (La.App. 3 Cir. 3/13/02), 811 So.2d 1222, 1229, *writ denied*, 02-1051 (La.11/15/02), 829 So.2d 423.

Regarding the level of corroboration necessary, this court has stated that a "great caution" instruction regarding accomplices is not necessary where there is material corroboration of an accomplice's

testimony. *State v. Chesson*, 03-606 (La.App. 3 Cir. 10/1/03), 856 So.2d 166, *writ denied,* 03-2913 (La.2/13/04), 867 So.2d 686. "Testimony is materially corroborated 'if there is evidence that confirms material points in an accomplice's tale, and confirms the defendant's identity and some relationship to the situation.'" *Id*. at 186 (quoting *State v. Schaffner,* 398 So.2d 1032, 1035 (La.1981)).

*State v. Stringer*, 06-800, pp. 32-33 (La.App. 3 Cir. 12/6/06), 949 So.2d 464, 486, *writ denied*, 07-04 (La. 9/14/07), 963 So.2d 996.

We note that there were several substantial corroborating material points made by Ms. Serie in support of her allegation that Defendant was the robber who entered Mr. Delafosse's home. Ms. Serie testified that after the robbery, she and Defendant did some cocaine. After that, she left to get some more drugs and went to a friend's house. She stated that Defendant called her phone more than forty times using Mr. Delafosse's phone. She also stated that throughout the morning hours, they would meet up and do more drugs. She testified that Defendant had called Ms. Fontenot twice to get her to come home because he wanted to go out to find more drugs, but he was babysitting the children. At the time, Ms. Fontenot's phone number was 532-4072. As noted above, Mr. Delafosse's phone records for the early morning of July 1, 2012, show over forty outgoing calls to Ms. Serie's phone and two calls to Ms. Fontenot's phone.

Ms. Serie also testified that Defendant described the robbery to her. He said that after he left Mr. Delafosse's house, Mr. Delafosse yelled to him that he (Mr. Delafosse) would get him. Mr. Delafosse testified that after the robber left the house, he "walked to the door and he was turning the corner by the park. I said I will get you[,] I remember, I know who you are."

At trial, Defendant insisted that he did not live at the house with Ms. Fontenot and that the black pants with the hole in the pocket and the plaid,

10

flannel shirt found in the crawl space in the bathroom were not his clothes. He argued that other men came into and out of the house. He testified that he had been at the house for approximately a week prior to the robbery, but could not name one man who could have stashed the clothes in the bathroom crawl space.

Though the witnesses' testimonies were at times vague and disingenuous, there was sufficient evidence to convict Defendant beyond a reasonable doubt.

> [T]he testimony of a single witness, absent internal contradictions or irreconcilable conflicts with physical evidence, is sufficient to support a conviction. The credibility of the witness is a matter of weight of the evidence, not sufficiency, and determination of the credibility is left to the trier-of-fact's sound discretion and will not be re-weighed on appeal. *State v. F.B.A.*, 07-1526 (La.App. 3 Cir. 5/28/08), 983 So.2d 1006, *writ denied*, 08-1464 (La.3/27/09), 5 So.3d 138.

*State v. Jeter*, 09-1004, pp. 3-4 (La.App. 3 Cir. 4/7/10), 33 So.3d 1041, 1043-44.

In the instant case, we find that the witnesses' testimonies were not so incredible as to render the verdict clearly contrary to the evidence. The jury heard all of the testimony, including any inconsistencies, had the opportunity to observe the demeanor of the witnesses, and obviously believed Ms. Serie's and Mr. Delafosse's testimonies over that of Defendant. Therefore, we find that the evidence was sufficient to support Defendant's convictions. This assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER ONE

In this assignment of error, Defendant argues that his substantial right to be tried by a jury selected by him was violated when the trial court released a juror on the second day of trial and substituted an alternate juror therefor. During *voir dire*, the trial court questioned a potential juror because she had indicated that she was in her last semester of nursing school in pursuit of becoming a registered nurse. She informed the trial court that she was doing her clinicals every Thursday and Friday.

11

The trial court asked her if it would be a problem if she missed a day. She said she did not think so, but would check to be sure. The potential juror was accepted and sworn in the same day. The next day, prior to the jury being brought into the courtroom, the trial court informed the State and defense counsel that the juror had informed him that there was a problem. She had been advised that missing a day of clinicals could possibly interfere with her graduating that semester. The trial court then questioned the State and defense counsel as to whether they thought the trial would conclude that day, a Wednesday. Both parties indicated that the trial could very well conclude on Wednesday.

The trial court then called the juror, Ms. Joubert, into the courtroom. The following conversation took place:

BY THE COURT:

So . . . so I'm telling you, you did the right thing. So I'm understanding that maybe we got a problem with the clinicals now is that . . . .

BY MS. JOUBERT:

Yes[,] sir. I contacted my clinical instructor yesterday after we left[,] and I told her that I would be missing a day of clinical[,] and she told me that I needed to contact our head of nursing to see if it would risk my position in the program. So[,] I e-mailed her and let her know that hopefully it would end on Thursday and that I would be back for clinical on Friday.

BY THE COURT:

Right.

BY MS. HAYDEN ELIZABETH JOUBERT, JUROR #79:

And she asked if I expressed that I cannot miss clinical during my last semester of nursing school cause it could risk my position in graduating here in May, to see when I can make up that time in such a short period now that we're graduating less than three months.

12

BY THE COURT:

And . . . what was the outcome of that?  Do you think you could make it up if you need it or not?

BY MS. HAYDEN ELIZABETH JOUBERT, JUROR #79:

I . . . and I don't think that we can cause only certain amount of students are allowed per day on the floor[,] and we have one clinical instructor and she has thirty of us, meaning ten people per day. So[, if] I miss a day[,] I can't just come another day cause that would make eleven[,] and we have other schools that are also using the facility.  So[,] it would present a problem of when I can within the next three months of graduation.

The trial court then told Ms. Joubert that there was a fifty-fifty chance they could finish that day and asked, if so, could she stay and be attentive to the issues presented.  She responded that she could and would stay, but emphasized that if she were required to stay the next day, Thursday, she would not be able to keep her mind on the trial.  "Today[,] I could give my full attention.  If I was to miss tomorrow[,] then I would be afraid that my attention would not be here tomorrow."  The trial court then stated that if, at the end of the day, it became apparent the trial would continue into the next day, Ms. Joubert could be excused and an alternate would be substituted in her place.  The State had no problem with Ms. Joubert being excused at the end of the day in this event; however, defense counsel objected stating:

BY MR. FUSILIER:

Judge, excuse me.  Speaking with my client . . . he is concerned that[,] if she . . . has a job to go back to[,] that he'd rather her be released today if it's alright with the Court.

BY THE COURT:

He can rather all he wants. She just told me she can give full attention today. Ya'll both told me before we started that we'd probably finish today. There's no reason to excuse Ms. Joubert at this point. Her problem comes in after this afternoon. She has to be in clinicals tomorrow[,] and I'm guaranteeing her that I will not require her to be here tomorrow.

BY MR. FUSILIER:

If that's the case[,] I'd like to note my client's objection for the record.

However, at the end of the day, because the State was unable to obtain a necessary document to submit into evidence until the next day, it became apparent the trial would carry over to the next day. The trial court then excused the juror and substituted an alternate juror. We note that at this time, Defendant did not object, but seemingly agreed that the alternate juror was fully capable of proceeding into deliberations.

In brief, Defendant's counsel argues:

After a jury has been selected and trial has commenced, double jeopardy attaches. It is at this point that "the accused has a right to have the particular jurors selected to try him and decide his fate, save in cases of death, illness or any other cause which renders a juror unfit or disqualified to perform this duty[.]" *State v. White*, 244 La. 585, 153 So.2d 401, 620 (1963). The Court in *White* went on to state that this "right of the accused is a substantial one, the improper deprivation of which is prejudicial. Hence, Article 557 of the Code of Criminal Procedure (La.R.S. 15:557) which deals with harmless error, is inapplicable." *Id*. at 620.

As noted by the Louisiana Supreme Court in *State v. Cass*, 356 So.2d 396 (La. 1977), a defendant should be given a hearing to determine if the juror has become disqualified to perform his duties. See La. Code Crim.P. art. 789[,] *State v. Fuller*, 454 So.2d 119 (La. 1984). Clearly the trial court did not find that Juror Joubert was unable to perform her duties or disqualified from doing so in the true meaning of La.Code Crim.P. art. 789. The trial court must have a valid reason for finding her unable to perform her duties, thereby necessitating her removal from the jury panel. As the trial court was

14

aware that Juror Joubert would need to attend clinicals, it should have excused her for hardship at that time.

It is not clear whether Defendant is alleging that the trial court erred because it did not excuse the juror initially or that the trial court erred because it excused the juror prior to deliberations. However, Defendant refers to *State v. Tennors*, 05-538 (La.App. 3 Cir. 2/15/06), 923 So.2d 823, wherein the trial court excused a juror prior to deliberations for the reason that the juror had a personal obligation that evening, and it was clear that deliberations would interfere with the juror's obligation. The juror's personal obligation was that of officiating a high school football game. This court reversed the convictions noting that "[t]he trial court's well-intentioned release of a juror to allow him to fulfill a personal or business obligation deprived the Defendant of his 'substantial' right to be tried by a jury selected by him." *Id.* at 838.

In *Tennors*, this court did an extensive review of Louisiana's jurisprudence regarding the release of sworn-in jurors. This court noted that La.Code Crim.P. art. 789(A) provided, in pertinent part, that "[a]lternate jurors, in the order in which they are called, *shall replace jurors who become unable to perform or disqualified from performing their duties.*" *Id.* at 826. This court also noted that in *State v. Square*, 244 So.2d 200, 237 (La.1971), *vacated and remanded on other grounds*, 408 U.S. 938, 92 S.Ct. 2871 (1972), the supreme court held, "'[w]e are of the opinion that under Article 789 the jurors once selected are expected to serve, save in cases of death, illness or other cause which renders the juror unfit or disqualified to perform his duty.'" *Id.* at 828.

We find *Tennors* distinguishable from the instant case.

> In *State v. Robertson*, 518 So.2d 579, 582-583 (La.App. 1 Cir.1987), *writ denied*, 523 So.2d 227

15

(La.1988), a juror failed to return to the courthouse the day after she was selected to serve on the jury because she had learned her employer would not pay her for the days she would spend on jury duty. Following the issuance of a summons, the juror reported back to court. When asked by the prosecutor whether she could be a fair and impartial juror in light of this situation, the juror explained that she could not because her mind would not be on the trial. The First Circuit held that because the juror's answers indicated that she did not wish to serve on the jury and that she would not be paying attention to the trial, the trial judge had no choice but to excuse the juror pursuant to LSA-C.Cr.P. art. 796.

In *State v. Taylor,* 545 So.2d 1237 (La.App. 2 Cir.1989), *judgm't amended on other grounds,* 551 So.2d 1332 (La.1989), a juror notified the court that he was losing business due to his inability to work and that this situation was causing him to be distracted from the case. The Second Circuit held that due to the juror's testimony that he was unable to concentrate on the case, the trial judge's ruling was not an abuse of discretion. *See also State v. Wiley*, 513 So.2d 849 (La.App. 2 Cir.1987), *writ denied,* 522 So.2d 1092 (La.1988)(trial judge properly dismissed juror whose decision-making ability was probably impaired and who could not concentrate on the trial because no one was home to take care of her children).

*Id.* at 832-33 (quoting *State v. Mohamed,* 96-845, p. 5 (La.App. 5 Cir. 9/17/97), 700 So.2d 881, 883).

In the instant case, the trial court had no choice but to excuse Ms. Joubert pursuant to La.Code Crim.P. art. 796 and did not abuse its discretion. In *Robertson*, the juror who was losing wages claimed she could not be impartial because her mind was not on the trial. In *Taylor*, a juror was distracted from the trial because he was losing business. In this case, Ms. Joubert explained that she would be distracted during deliberations if she missed her clinicals and would thereby be required to wait another semester to graduate. Her livelihood depended on graduating. Ms. Joubert's obligation was not a personal obligation such as

officiating a football game. Her ability to fulfill her legal obligation as a fair and impartial juror would have been severely compromised if not abrogated.

Though Defendant has a substantial right to be tried by a jury selected by him, he also has the reciprocal and substantiated right to have a jury comprised of jurors that are paying attention and not distracted by legitimate and stressful outside concerns. We find that the trial court did not abuse its discretion when it released Ms. Joubert and replaced her with an alternate juror. Accordingly, there is no merit to this assignment of error.

## PRO SE ASSIGNMENT OF ERROR NUMBER ONE

In this assignment of error, Defendant contends that he is being denied his constitutional right to a judicial review because of some fifty-five "inaudible" notations contained in the record of the trial.

> Both this court and the United States Supreme Court have made clear that a criminal defendant has a right to a complete transcript of the trial proceedings, particularly where appellate counsel was not counsel at trial. *State v. Deruise*, 98-0541, p. 11 (La.4/3/01), 802 So.2d 1224, 1234, *cert. denied*, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001), *citing Hardy v. United States,* 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964) and *State v. Robinson,* 387 So.2d 1143 (La.1980). The Louisiana State Constitution guarantees that "[n]o person shall be subjected to imprisonment . . . without the right of judicial review based upon a complete record of all evidence upon which the judgment is based." LSA-La. Const. art. I § 19. Additionally, in all felony cases, the clerk or court stenographer shall record all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel. LSA-C.Cr.P. art. 843. The court reporter shall record all portions of the proceedings required by law and shall transcribe those portions of the trial proceedings required. LSA-R.S. 13:961(C).

> Material omissions from the transcript of the proceedings at trial bearing on the merits of an appeal require reversal. *State v. Landry*, 97-0499 (La.6/29/99), 751 So.2d 214; *Robinson*, 387 So.2d at 1144. Although this court has found reversible error when material portions of the trial record were unavailable or incomplete, a "slight

inaccuracy in a record or an inconsequential omission from it which is immaterial to a proper determination of the appeal" does not require reversal of a conviction. *State v. Brumfield,* 96-2667, pp. 14-16 (La.10/28/98), 737 So.2d 660, 669, *cert. denied,* 526 U.S. 1025, 119 S.Ct. 1267, 143 L.Ed.2d 362 (1999); *State v. Parker*, 361 So.2d 226, 227 (La.1978). A defendant is not entitled to relief because of an incomplete record absent a showing of prejudice based on the missing portions of the transcript. *State v. Castleberry*, 98-1388, p. 29 (La.4/13/99), 758 So.2d 749, 773, *cert. denied,* 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999); *State v. Hawkins*[,] 96-0766, p. 8 (La.1/14/97), 688 So.2d 473, 480.

*State v. Boatner*, 03-485, pp. 4-5 (La. 12/3/03), 861 So.2d 149, 152-53.

Our review of the record in this case reveals that the omissions were few and inconsequential to the issues being discussed at the time. One of the "inaudibles" was during defense counsel's closing argument. One "inaudible" occurred during a discussion between the trial court and the foreperson of the jury regarding the verdict sheet forms. Another "inaudible" occurred during the polling of the jury when the jurors were writing down their individual verdicts. These particular omissions were not material to Defendant's guilt or innocence.

Defendant points to one "inaudible" during Ms. Serie's testimony. There was some confusion as to the exact color of the flannel shirt Defendant supposedly wore the night of the robbery. Mr. Delafosse described the shirt as red and black plaid. At trial, Ms. Serie agreed with Mr. Delafosse, but also admitted that she had told the police that she thought the shirt was blue or turquoise and black plaid. During a lengthy discussion regarding the confusion in color, with the shirt in hand, the State asked Ms. Serie, "And is this the same shirt that (inaudible) got back?" Ms. Serie answered, "Yes. The . . . colors on it like the blackish grayish or whatever[,] maybe that's why I'm mistaken it [sic] for being bluish green[,] but that's definitely the shirt."

18

The remaining "inaudibles" pointed out by Defendant occurred during Mr. Delafosse's testimony. In each case, from the context of the subject being discussed and its placement in the sentence structure, it is clear that the omission was a single word or a colloquialism that was inaudible to the court reporter, but nothing that would have interfered with our appellate review of Defendant's conviction. As noted above, the identification of the robber came primarily from Ms. Serie and not Mr. Delafosse.

Defendant also alleges that "an apparent objection and discussion made by the State is completely missing[.]" Following closing arguments, out of the presence of the jury, the trial court discussed the jury instructions with counsel, as follows:

BY THE COURT:

Um . . . In that case, the next question is when the jury is asked to deliberate, the jury is going to be allowed to take a copy of the jury instructions into the jury room unless this action is objected to by either party. And so, I'm asking for the record, does the State have any objection to the jury being provided a copy of the jury instructions during deliberation?

BY MR. FONTENOT:

Yes sir.

BY THE COURT:

You do object?

BY MR. FONTENOT:

In that case, we will not allow the jury to have jury instructions with them in the jury room during deliberations. The only other issue I think that the two attorneys and I discussed this morning was the stipulation with regard to the prior conviction.

BY MR. FONTENOT:

Yes, sir.

It appears that the court reporter left out the State's response and the caption "BY THE COURT." Louisiana Code of Criminal Procedure Article 801(A) and (B)(1) provides that a written copy of the jury instructions may be given to the jury absent an objection by either the defense or the State. Defendant fails to show how this omission prejudiced his case.

In *Boatner*, 861 So.2d 149, the supreme court noted there were no fewer than two hundred and ten instances in which testimony was inaudible. In some cases, entire questions and their answers were inaudible. However, the supreme court noted that "[t]he crucial issue is not the amount or number of omissions[,] but rather whether the omissions are material and caused prejudice to the defendant." *Id*. at 153. The supreme court noted that the testimony of all the witnesses were identified and transcribed. The "Q" and "A" format was used throughout the transcript, and, although there were numerous inaudible portions of the transcript, the omissions did not preclude a complete review. The state's case rested almost entirely on the testimony of two witnesses, and the jury was presented with a relatively straightforward credibility determination. The defendant testified, and "[a]lthough his trial testimony was not perfectly transcribed, the essence of his testimony could be ascertained from the record." *Id*. at 154. The supreme court went on to state:

> An incomplete record may be adequate for full appellate review. *See Hawkins*, 96-0766 at 8, 688 So.2d at 480. Additionally, we note there exists a presumption of regularity in judicial proceedings. LSA-R.S. 15:432. The record in this matter is adequate for the court to examine and determine there was sufficient evidence to support a conviction. Defendant has failed to show how he was prejudiced by the missing portions of the testimony replaced by an "inaudible" designation. Unlike other cases reviewed by this court, the record did not lack the complete testimony of one or multiple witnesses or significant steps in the trial procedure.

*Id.* at 155 (footnote omitted).

In the instant case, Defendant argues only that "since they [inaudible designations] have to do with sufficiency of the witnesses' testimony[,] then the evidence is insufficient[,] and the defendant suffered prejudice as a result." As noted above, we have found the evidence to be sufficient to establish the offenses beyond a reasonable doubt. Accordingly, we find that Defendant failed to show any reasonable likelihood that he was prejudiced by the "inaudible" portions of sentences spoken by the witnesses. There is no merit to this pro se assignment of error.

### PRO SE ASSIGNMENT OF ERROR NUMBER TWO

Defendant argues that he was subjected to double jeopardy. As noted herein, after arranging for the victim to leave his door unlocked, Defendant entered the victim's house, uninvited, with a knife. Thereafter, among the things he stole from the victim was a gun. He argues:

> If the knife is applied to the aggravated burglary and the firearm is applied to the pooession [sic] of [the] firearm charge, what weapon was applied to the armed robbery charge (14:64). To apply the two weapons to three charges is a violation of the "same evidence test" and is therefore double jeopardy. At least one of the defendant's convictions must be ste [sic] aside.

In *State v. Grace*, 10-1222, pp. 14-15 (La.App. 3 Cir. 4/6/11), 61 So.3d 812, 823, *writ denied*, 11-961 (La. 10/21/11), 73 So.3d 382, this court outlined what constituted double jeopardy and the tests to determine whether double jeopardy had occurred as follows:

> The constitutional protections against double jeopardy prevent a second prosecution for the same offense after an acquittal or conviction, and prevent multiple punishments for the same offense. *State v. Smith*, 95-061 (La.7/2/96); 676 So.2d 1068. Our courts apply two separate tests--the *Blockburger* test and the "same evidence" test--in order to determine whether offenses are the same for double

21

jeopardy purposes. The *Blockburger* test, derived from *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), requires the court to determine whether each crime requires proof of an additional fact that the other does not. *Id*. The "same evidence" test is as follows:

> If the evidence required to support a finding of guilty of one crime would also have supported a conviction for the other, the two are the same under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for a conviction, not all of the evidence introduced at trial.

*Smith,* 676 So.2d at 1069-70. The remedy for a double jeopardy violation for multiple punishments for the same offense is to vacate the conviction and sentence for the less severely punishable offense and affirm the conviction and sentence for the more severely punishable offense. [*State v.*] *Rabun*, [38,655 (La.App. 2 Cir. 8/18/04),] 880 So.2d 184.

In the instant case, aggravated burglary, in pertinent part, is defined as "the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender, (1) Is armed with a dangerous weapon[.]" La.R.S. 14:60. Armed robbery is defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La.R.S. 14:64. Finally, it is illegal for a felon convicted of certain crimes as enumerated in La.R.S. 14:95.1 to be in possession of a firearm. At trial, it was stipulated that Defendant had been convicted of first degree robbery in 2007, which was one of the enumerated crimes for the purpose of La.R.S. 14:95.1.

In *State v. Lefeure*, 00-1142 (La.App. 5 Cir. 1/30/01), 778 So.2d 744, *writ denied*, 01-1440 (La. 9/21/01), 797 So.2d 669, the fifth circuit discussed whether convictions for aggravated burglary and armed robbery violated the defendant's

right not to be subjected to double jeopardy. In *Lefeure*, the defendant forced his way into a daiquiri shop as the employee attempted to lock the door and robbed the employee at gun point of the day's proceeds. Among other offenses, he was convicted of aggravated burglary and armed robbery. After defining the offenses of armed robbery and aggravated burglary, the fifth circuit noted:

> In [*State v.*] *Bridgewater*, [98-658 (La.App. 5th Cir. 12/16/98), 726 So.2d 987,] the defendant was convicted of armed robbery and aggravated burglary and he appealed. The defendant argued that the trial court erred in denying his motion to quash because the indictment violated the constitutional prohibition against double jeopardy when it subjected him to multiple punishments for the same offense. The victim, in *Bridgewater*, testified that he was working on his car in the driveway, when the defendant and another man approached him from behind, pointed their gun at him and ordered him to give him all of his money. The victim's wife was standing nearby. The perpetrators ordered both to go inside their house. The two men then ordered the victim's wife to give them all of her jewelry. The perpetrators searched through the victims' belongings and eventually left. *Id*. at 989.

> This court found that the defendant in *Bridgewater* was not subject to double jeopardy based on the following analysis:

>> When defendant pointed his gun at Mr. Ghebreziabher and ordered him to give him all the money he had, the armed robbery against Mr. Ghebreziabher was completed. Thereafter, the defendant entered the victims' home without authorization and forced them to accompany him by holding them at gunpoint with the intent to commit a felony or theft. That completed the aggravated burglary. Likewise, the armed robbery of Mrs. Ghebreziabher occurred when the defendant pointed his gun at her and forced her to give him her jewelry. Therefore, we conclude that defendant was not subjected to double jeopardy.

> *State v. Bridgewater*, 726 So.2d at 992-993.

> In reaching its conclusion that the defendant was not subjected to double jeopardy, the court in *Bridgewater* used the rationale of *State v. Cureaux*, 467 So.2d 1377, 1379-1380 (La.App. 5th Cir.1985) and *State v. Ford*, 608 So.2d 1058, 1063-1064 (La.App. 1st Cir.1992),

which both held that convictions for the crimes of aggravated burglary and armed robbery do not violate the principle of double jeopardy:

> In *State v. Cureaux*, 467 So.2d 1377, 1379-1380 (La.App. 5th Cir.1985), defendants were charged with aggravated burglary and armed robbery. One of the defendants knocked on the door to the victims' home and asked if she could use the telephone. When the victims opened the door to allow her to enter their home, defendants burst through the door. Defendants were armed with guns. After committing batteries upon the victims, defendants stole various items from the house.

> On appeal, defendants claimed that a joint trial for the crimes of aggravated burglary and armed robbery subjected them to double jeopardy. A panel of this court held that, although the crimes arose from the same criminal incident, prosecution for both aggravated burglary and armed robbery did not violate the bar against double jeopardy because the two crimes encompass different elements. *Id.* We explained that the crime of aggravated burglary was completed upon the defendants' entry into the victims' residence, while the victims were present, with the specific intent to commit theft while armed with guns, or when they committed battery upon the victims. *Id.* Further[,] the armed robbery did not occur until the defendants actually took the victims' belongings while holding the victims at gunpoint.

> The First Circuit has determined that under both the *Blockburger* test and the "same evidence" test, convictions for the crimes of aggravated burglary and armed robbery do not violate the principle of double jeopardy because the two offenses do not contain identical elements, neither offense is a lesser included offense of the other, and the offenses, although possessing similar elements, do not require the "same evidence" for a conviction. *State v. Ford*, 608 So.2d 1058, 1063-1064 (La.App. 1st Cir.1992). See also *State v. Jacobs*, 493 So.2d 766, 767-770 (La.App. 2nd Cir.1986).

*State v. Bridgewater*, 726 So.2d at 992.

In this case, using the rationale in *Bridgewater*, we find that the crime of aggravated burglary of the Bayou Daiquiris store was completed upon the Defendant's unauthorized entry into the store by pushing his way in when Moore unlocked the door to leave, while

Moore was present, with the specific intent to commit a felony of theft while armed with a gun. The crime of armed robbery of Moore was thereafter accomplished when he forced Moore at gunpoint to turn over the money.

Based on the foregoing, we find no double jeopardy violation in trying and convicting the Defendant of both the aggravated burglary of Bayou Daiquiris and the armed robbery of Moore.

*Id*. at 751-52.

According to the jurisprudence set forth above, in the instant case, the offense of aggravated burglary was completed when Defendant entered the victim's house, uninvited, with the specific intent to commit a felony with the use of a dangerous weapon, the knife. The offense of armed robbery was committed when he pressed the knife to the victim's chest and demanded money. The gun he took from the victim's possession was just another item of the theft. The offenses of armed robbery and aggravated burglary do not contain identical elements and neither offense is a lesser included offense of the other. Accordingly, Defendant was not subjected to double jeopardy in this case. *State v. Hammond*, 97-712 (La.App. 3 Cir. 1/7/98), 704 So.2d 1281, *writ denied*, 98-374 (La. 6/5/98), 720 So.2d 679. There is no merit to this assignment of error.

## DISPOSITION

Defendant's convictions are affirmed in their entirety; however, the trial court is instructed to correct the court minutes of sentencing to reflect that Defendant's sentence for armed robbery is to be served without benefit of parole, probation, or suspension of sentence.

**AFFIRMED WITH INSTRUCTIONS.**