FREDERICKA HOMBERG WICKER, Judge.
^Defendant Joshua Preston appeals his convictions for second degree murder in violation of La. R.S. 14:30.1, illegal possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1, and armed robbery in violation of La. R.S. 14:64, assigning error to the court’s denial of defendant’s motion to suppress an in-person line-up identification, the court’s refusal to order a mistrial after denying a request to replace two jurors with alternate jurors, and alleging that the evidence presented at trial was insufficient to support his armed robbery conviction. For the following reasons, we affirm the defendant’s convictions.

Procedural History

On June 14, 2012, a Grand Jury returned-a true bill of indictment charging defendant with second degree murder, possession of a firearm by a convicted felon, and armed robbery., At his June 15, 2012 arraignment, defendant pled not | «¡guilty to all charged offenses. On July 18, 2012, defendant filed a motion to suppress evidence obtained from a physical line-up identification, alleging that a pre-indictment physical lineup conducted without the presence of appointed counsel violated his right to counsel. After a hearing, the trial court took the matter under advisement and permitted the parties additional time to file memoranda in support of their positions. On September T2, 2013, the trial court denied defendant’s motion to suppress, 'finding that the law does not require the presence of appointed .counsel at pre-indictment lineups and that there was no evidence the police engaged in any bad faith éffort to deny defendant’s right to counsel.
On June 25, 2014, trial commenced before a twelve-person jury. During the trial, defense counsel moved for substitution of two of the jurors with alternate jurors on the grounds that defendant had observed two of the jurors sleeping. The trial court denied the motion, and defense counsel immediately moved for a mistrial, which the trial court also denied. On June 26, 2014, the jury returned a verdict finding defendant guilty of all three .counts. At. the sentencing hearing on July 10, 2014, the trial court sentenced defendant as follows: on count one, for second degree murder, to life imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence; on count two, for illegal possession of a firearm by a convicted felon, to twenty years imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence; and on count three, for armed robbery, to forty years imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence. Defendant’s timely appeal followed.

*211
Facts

On the evening of July 16, 2011, Alfonso Silva was murdered on the 900 block of Roosevelt Boulevard in Kenner, Louisiana. Police investigating the murder were able to reconstruct the events leading up to the victim’s death from | ¿surveillance videos of nearby businesses and residences. The surveillance videos showed that the victim was leaving Brother’s Food Mart located on Airline Highway and walking toward his home when a thin black male wearing a white polo shirt with blue stripes, blue jeans, and a blue hat, began following him. After following the victim for several blocks, the suspect confronted the victim at the corner of Airline Highway and Roosevelt Boulevard, shot the victim in the abdomen, and ran north on Roosevelt Boulevard. Despite medical intervention, the victim ultimately succumbed to this gunshot wound.
At the time of the shooting, Sherry Go-nant was talking on the phone on the front porch of her home located at 917 Taylor Street in Kenner, which is. one block northwest of where the victim was shot. Upon hearing the gunshot,' Ms; Conant ended her conversation to call 9-1-1, at which point she witnessed a young black male running down the street from the direction of the gunshot.' Ms. Conant testified that she got a “good look” at the suspect and described him as a “young black male,” with “short hair ... clean cut ... ’ long face, high cheekbones,” wearing a “white shirt, blue stripes, double blue stripes, blue jeans,” and a “bright blue hat.” Ms. Go-nant then called the police to report what she had witnessed and recounted the same events later that night to Detective Joseph McRae, the lead Kenner Police Detective on the investigation. Approximately two weeks later, Detective McRae showed Ms. Conant still photographs captured ft’om Brother’s Food Mart surveillance-videos depicting, a suspect wearing clothes that matched Ms. Conant’s description. Ms, Conant identified the suspect in-these photos as the same man she had witnessed running in front of her home on the night of the murder.
Kenner police officers also developed a composite sketch of the suspect based on Ms. Conant’s description. These still photographs and the composite Usketch were later used in a Crimestoppers bulletin posted throughout the area seeking information as to the identity of the pictured suspect. In response to this Crimestop-pers bulletin, the Kenner Police Department received anonymous tips implicating defendant in the murder. Based, on these tips, Detective McRae developed a photographic lineup that included .defendant’s photo and returned to Ms. Conant’s home on September 18, 2011, with the photo lineup, but she was unable to positively identify anyone in the lineup. Ms. Conant later testified that she was “not very good with photographs.”
Danielle Lathers, the mother of defendant’s girlfriend, later told police that she had provided an anonymous tip implicating defendant. At trial, Ms. Lathers testified that she and her daughter saw the .bulletin while shopping with - defendant and • that they both .immediately, recognized defendant as the suspect in the picture based on his clothing. Ms. Lathers also testified that defendant later told her that he had needed some money and that he had killed the victim because he had seen defendant’s face.
On February 1, 2012, defendant was arrested for the armed robbery of Tiffany Hayes French in front of the New Generar tion Fellowship church on Roosevelt Boulevard in Kenner. At trial, Ms. French testified that she was approaching the church around 7 p.m. when a young African American male pufa silver handgun to *212 her neck and grabbed one strap of her purse. Ms. French testified that she “let go of [her] purse and the person ... just took off running.” Due to the late hour, the poor lighting around the church, and being “shaken” from the incident, Ms. French could not offer a clear description of the suspect’s face. Based on the limited description provided by Ms. French, police dispatchers broadcasted a description of the suspect as being a thinly-built male between 20 Rand 25 years old, with a height of 5'7", wearing a black, short-sleeved t-shirt, dark jeans, and carrying a gray purse and a silver pistol.
' Kenner Police Officers in the area began searching for the suspect around Roosevelt Boulevard. Officer John Cusimano testified that during the search, he heard the sound of tin-fences moving and witnessed’ a male jumping a fence and running away from the officers. While pursuing this suspect, two men outside of a nearby house waved to Officer Cusimano and indicated that someone was underneath the elevated house at 718 Filmore Street. As Officer Cusimano circled the house he heard “scuffling” coming from beneath the house and then saw a person fleeing from under the house wearing jeans and a gray t-shirt with red writing on it,
Minutes later, Detective Robert Wim-berly, who was also searching for the armed robbery suspect, received information that the suspect was in a nearby house located at 728 Filmore Street. Detective Wimberly went to that house with other officers and received consent to search the house from a resident. The officers immediately went to the back bedroom in response to another officer’s radio report that the light in that bedroom had been turned off when the officers were at the front door. In that bedroom,’officers found defendant lying on the floor “kind of half under the bed like he was trying to hide,” and another individual, Sammy Matthews, sitting on the bed. Defendant was wearing a t-shirt and shorts, and his arms and legs were covered in mud.
While securing defendant, the officers found Ms. French’s cell phone in a dresser drawer next to the spot where defendant was found. On that same evening, officers searching the 728 Filmore Street residence discovered muddy clothing consistent with Ms. French’s description of the suspect who had robbed her and |7consistent with the clothing worn by the subject Officer Cusimano had chased from underneath the house at 718 Filmore Street.
After arresting defendant and securing the other individuals present in the residence, officers conducted a “show-up” identification procedure in which Ms. French was shown all of the black males arrested in the residence at 728 Filmore Street and asked her if she could identify any of them as the person who had robbed her. Ms. French was unable to identify any of the persons present as the perpetrator of the armed robbery.
The day after arresting defendant, police officers discovered a silver revolver in a backyard adjacent to the residence at .728 Filmore Street in which they had discovered defendant. On the following day, after obtaining a search warrant for 728 Filmore Street, police officers returned to conduct a more thorough search of the residence and discovered Ms. French’s gray purse located in a laundry room. This purse contained numerous items belonging to Ms. French, including her ID, checkbook, and credit cards.
On February 13, 2012, while defendant was in custody, the State obtained an order compelling defendant’s presence in a physical lineup. On February 15, 2012, at a physical lineup, Ms. Conant positively identified defendant as the person she hád *213 seen running from the scene of the shooting of Alfonso Silva on July 16, 2011.

Discussion and Analysis

Defendant assigns three errors: first, the trial court erred in denying defendant’s motion to suppress the physical lineup identification; second, the trial court erred in refusing to order a. mistrial after denying defense counsel’s request to replace two allegedly sleeping jurors with alternate jurors; and third, the evidence presented at trial was insufficient to support his conviction for armed robbery.
| ¡/Though defendant alleges the insufficiency of the evidence to support his armed robbery conviction in his third assignment of error, when the issues on appeal relate to both the sufficiency of evidence and one or more trial errors; the reviewing court should first .determine .the sufficiency .of the evidence by considering the entirety of the evidence before addressing the allegations of trial error. State v. Hearold, 603 So.2d. 731, 734 (La.1992). Accordingly, we first address the sufficiency of the evidence before addressing defendant’s remaining .assignments , of error.
Defendant argues that the evidence was insufficient to support a jury’s finding that he was the person'who committed the armed robbery. Defendant does not argue that the State failed to prove all of the essential elements of armed robbery under La. R.S. 14:64; rather, defendant contends that the circumstantial evidence of 'his identity as the perpetrator of the armed robbery failed to negate all reasonable hypotheses of innocence. Defendant’s argument is based on the absence of any witness capable of identifying him as the perpetrator of the armed robbery against Tiffany Hayes French.
Defendant further asserts that the testimony of Danielle Lathers casts doubt on his identity as the armed robber. At trial, Danielle Lathers testified that an individual named Joshua Jones told her that he robbed an “old lady” of either her social security or income tax check at gunpoint in front of a church. Ms. Lathers testified that Joshua Jones told her that he had fled to the residence at 728 Filmore Street after the robbery and that he was present in the house when police arrested defendant within that residence. On cross-examination, Ms. Lathers admitted that she did not have personal knowledge of the truth of the alleged confession by Joshua Jones. Beyond Ms. Lathers’ testimony, defendant offered no additional evidence as to the identity of Joshua Jones or the truth of his alleged confession.
[aIn reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, (1979); State v. Neal, 00-674 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). Evidence may be di rect or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact can be inferred according to reason and common experi-énce. State v. Williams, 05-59 (La.App. 5 Cir. 5/31/05), 904 So.2d 830, 833. All evidence, both direct and circumstantial, must be sufficient-to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Wooten, 99-181 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La.1/14/00), 753 So.2d 208.
*214 An appellate court’s primary function is not to re-determine the defendant’s guilt or innocence in accordance ■with its appreciation of the facts and credibility of the witnesses. Rather, our function is to review the evidence in the light most favorable to the prosecution and determine whether there is sufficient evidence to support the jury’s conclusion. State v. Banford, 94-883 (La.App. 5 Cir. 3/15/95), 653 So.2d 671, 677. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept .or reject, in whole or in part, the testimony -of any - witness; the credibility of the witnesses will not be reweighed on appeal. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.
In addition to proving the statutory elements of the charged offense , at trial, the State is required to prove defendant’s identity as the perpetrator. State v. Draught 05-1825 (La.1/17/07), 950 So.2d 583, 598, cert. denied; 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007); State v. Ingram, 04-551 (La.App. 5 Cir. 10/26/04), 888 So.2d 923, 926. Where the key issue is identification, the State is required to .negate any reasonable probability of misiden-tification in order to carry its burden of proof.. Draughn, 950 So.2d at 593.
.At defendant’s trial, the State presented the testimony of Ms. French who stated that a young black male took her purse from her outside of her- church while armed with a gun. Police officers then pursued a fleeing suspect, later identified as defendant, in the vicinity of the church shortly after the robbery, and tracked him to the house at 728 Filmore Street. Inside 728 Filmore Street, the officers discovered defendant attempting to hide from police under a bed with his arms and -legs covered in mud, consistent with the fleeing suspect who had hidden beneath the raised home. The police found Ms. French’s cell phone in a dresser drawer located next to the area where defendant was attempting to hide. Upon further investigation the police found the other items stolen from Ms. French’s purse in the same house where defendant was apprehended, and a silver pistol, consistent with Ms. French’s testimony, in the area where the police chased defendant before finding him inside the house at 728 Filmore Street.
While Ms. Lathers’ testimony may have suggested an. alternative suspect, Ms. Lathers also testified, that she had no personal knowledge as to the truth of this confession, nor did defendant put forth any evidence tending to prove the truth of the alleged'confession. Moreover, there is no evidence ’ in the record that a person named Joshua Jones was present at the 728 Filmore Street house on the evening of the armed robbery. Even accepting the truth of Ms. Lathers’ testimony and the truth of the alleged confession by Joshua Jones, arguendo, the circumstances-of that alleged robbery do not comport with the facts of the instant case. The victim in the instant case,- Ms. French, was not elderly, she did not report being robbed of In any social security or income tax check, nor were any social security or income tax checks discovered among the stolen items recovered in 728 Filmore Street.
Although Ms. French could not identify defendant as the person who committed the crime , against her, we . find that the State presented sufficient evidence to link defendant to the crimes, charged. Accordingly, we. conclude that the evidence of defendant’s identity as the perpetrator of the armed robbery sufficiently negated any possibility of misidentification. Therefore, this assignment is without merit.
In his first assignment of error, defendant argues that the trial court erred in denying his Motion to Suppress a physical lineup identification, because he was *215 denied his right to counsel under the Sixth Amendment and La. Const. Article 1, § 13, when the physical lineup was,conducted without appointed counsel , present on his behalf.[1] ,
At the Rearing on defendant’s motion to suppress, Detective McRae testified that after defendant’s February 1, 2012 arrest for armed robbery, he contacted Sherry Conant. Ms. Conant agreed to view , a physical lineup and attempt to identify the suspect she had seen .fleeing the scene of the July 16, 2011 murder of Alfonso Silya. Detective McRae then authored a motion to compel defendant’s presence in a physical lineup, which was granted on February 13, 2012. On that same day, Detective McRae met with defendant, who was still incarcerated, and reviewed the motion to compel with defendant. During that meetr ing with defendant, Detective McRae testified that he explained to defendant that defendant had a right to have his ⅛ attorney present and to give the motion to compel to his attorney. Detective McRae notified defendant that the physical lineup would take hsplace two days later. Detective McRae testified that at the time of this meeting, defendant voiced no objection to the physical lineup. , ’ '
On February 15, 2012, Detective McRae returned to defendant’s cell to review an “advice of lineup rights” form with him in anticipation of the physical lineup scheduled for that day. On that form, defendant indicated for the first time that he did not agree,to stand in a lineup without an attorney present.[2] Consequently,. Detecr five McRae contacted a member of the District Attorney’s, Office to arrange the presence of counsel for defendant. The District Attorney later notified Detective McRae that the Indigent Defender Board had refused to represent defendant because they were not assigned to his case. Despite defendant’s objection, the physical lineup went forward.1' Detective McRae testified that'prior to the lineup defendant was present in the same room with all of the other participants in the lineup and told officers in the room that he was satisfied with those participants.[3] Officers conducting the lineup also allowed defendant to select his own position within the lineup.
After,Ms. Conant entered the observation room the-lineup participants filed into a room on the opposite side of a one-way glass window. Ms. Conant testified that she knew immediately that defendant was the same person she had seen fleeing from the scene of the July, 16, 2011 murder, but that it was- very- important for her to be “absolutely positive” she was correct. Accordingly, Ms. Conant had defendant step forward to confirm her initial identification. Ms. Conant testified that upon closer inspection of defendant she identified him as the suspect, because of his height, his facial appearance, and because he ex *216 hibited the same “nervous | iatick” of “sucking his bottom lip” as that of the suspect who had passed her house on July 16, 2011. Ms. Cbnant also identified defendant as the suspect in' the courtroom during her testimony.
Defendant, argues that the State acted in bad faith by deliberately delaying filing formal charges against defendant,, thereby preventing attachment, of defendant’s right to appointed counsel. Defendant further argues that the State acted in bad faith by conducting the lineup without providing counsel for defendant after he noted his objection on the advice of rights form.
It is well-settled that a person’s right to counsel under both the federal and state constitutions attaches only after the initiation of adversarial judicial proceedings against him. See, e.g., Davis v. United States, 512 U.S. 452, 457, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994); State v. Carter, 94-2859 (La.11/27/95), 664 So.2d 367, 371. While the commencement of “adversary judicial criminal proceedings”, is generally marked by the filing of a formal charge, i.e., a bill of indictment or information, both the United States and: Louisiana Supreme Courts- have employed a functional test to make this determination. See, e.g., McNeil v. Wisconsin, 501 U.S. 171, 175-176, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991); State v. Montejo, 06-1807 (La.5/11/10), 40 So.3d 952, 972 . Thus, under both state and federal law, the point at which the right to counsel attaches is where the proceedings shift from investigation to accusation. Absent filing a bill of information or indictment, that point is at the defendant’s initial' court appearance or first judicial hearing. State v. Hattaway, 91-894 (La.7/2/93), 621 So.2d 796, 808, overruled in part on other grounds by Carter, supra.
Distinct from the constitutional right to counsel, La.C.Cr.P. art. 230 gives the accused a statutory right to procure and confer with counsel from the moment of arrest. State v. Thomas, 406 So.2d 1325, 1328 (La.1981). Nevertheless, violation- of La. C.Cr.P. art. 230 does not require exclusion of evidence absent the lushowing of a bad faith effort to circumvent the défendant’s statutory right to counsel. Thomas, 406 So.2d at 1328—29; State v. Graffia, 06-756 (La.App. 5 Cir. 1/30/07), 951 So.2d 1186, 1191.
In the instant case defendant was denied the presence of appointed counsel at a lineup that occurred after his arrest but prior to an initial court appearance or the return of a true bill of indictment against defendant. Accordingly, the defendant’s constitutional right to counsel had not yet attached at the time of the lineup, thus he was not entitled to the presence of appointed counsel at the lineup in question.
We further find no indication in the record that the State engaged in a bad faith effort to circumvent defendant’s right to counsel at the lineup. Contrary to defendant’s argument, the State had no duty to obtain an indictment against defendant at the earliest* possible moment. Neither the speedy trial rights guaranteed by the Constitution, nor the time delays for instituting prosecution under La. C.Cr.P. art. 572 required the State to file a bill of information or seek an indictment prior to the lineup,-which occurred two weeks after defendant’s arrest. To the contrary, prudence dictates that the State conduct a thorough investigation before instituting prosecution of such a serious offense, and the lineup identification was an integral part of the State’s investigation.
The.advice of rights lineup form provided to defendant does not change our *217 conclusion that the State conducted this lineup in good faith. The pre-printed, uniform advice of rights form given to defendant did not accelerate the point at which his right to appointed counsel attaches, thus defendant’s written objection to participating in the lineup without the presence of appointed counsel did not give him a right to the presence of appointed counsel which he would not have had. otherwise.
11fiMoreover, the record demonstrates that the State exceeded its statutory and constitutional obligations in attempting to accommodate the defendant’s request for counsel during the lineup:" After defendant declined to "voluntarily participate in the lineup with the presence of counsel, Detective McRae attempted to satisfy defendant’s request. When the Indigent Defender Board refused the State’s request, the officers conducting the lineup took efforts to ensure the fairness and accuracy of the procedure by allowing defendant to accept or reject the participants in the lineup and to select his own position within the lineup. Thus, nothing in the record suggests a bad faith effort on the part of the State to circumvent defendant’s right to counsel,' nor is there any indication that counsel’s presence would have changed the outcome.
In State v. Graffia, under virtually identical facts, this Court held that the State acted in good faith in conducting a lineup where the State attempted to' comply with a pre-indictment defendant’s request for counsel at a lineup and, after the Indigent Defender Board refused to attend the lineup, allowed the defendant to select the lineup participants and to select his position among them. Graffia 951 So.2d at 1191.
For the foregoing reasons, we find that the . trial court did not err in denying the motion to suppress the physical lineup identification.
In his second assignment of error, defendant argues that the trial court erred in refusing to order a mistrial after denying defendant’s motion to replace two allegedly sleeping jurors with alternate jurors.
La. C.Cr.P. art; 775 provides that, “[u']pon motion of a defendant, a mistrial shall be’ ordered, and in ¾ jury ease the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial[.]” " A mistrial is a drastic remedy and is warranted only when trial error 1^results in substantial prejudice to the defendant that deprives him of a reasonable expectation of a fair trial. Whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed absent an abuse of that discretion. State v, Williams, 12-687 (La.App. 5 Cir. 05/16/13), 119 So.3d 228, 235.
La. C.Cr.P. art. 789A provides the standard for substituting a juror with an .alternate juror: “Alternate jurors,, in the order in which they are called, shall replace jurors who become unable to perform or disqualified -from performing their duties.” In State v. Cass, the Louisiana Supreme Court held that, a trial court’s summary removal .of a juror who was allegedly sleeping during a portion of the trial testimony was reversible error. State v. Cass, 356 So.2d 396, 398 (La.1977). The Cass court reasoned that, under art. 789, even if a juror had briefly “doze[d] off, such is not per se .proof-of inability to perform, or any character of disqualification.” Id. In State v. Sterling, this Court'held that a trial court did not err in refusing to replace a sleeping juror where the trial judge observed a juror “nodding off’ several times during trial but did not observe the juror sleeping during a “substantial part of the *218 trial,” nor did the trial judge see the juror asleep for any .extended period of time, and .the defendant did not request a hearing to determine whether the juror was actually, asleep or unable to perform his function. State v. Sterling, 18-287 (La.App. 5 Cir. 12/12/18), 181 So.3d 295, 806. In State v. King, this Court held that a trial court did not err in refusing to replace a juror whose eyes were closed during trial, because the trial judge did not believe the juror was sleeping and there was.no indication that the. juror was sleeping through a substantial portion of the trial. State v. King, 11-767 (La.App. 5 Cir. 2/28/12), 88 So.3d 1147, 1156.
117In the- instant case, defense counsel requested a bench conference during the testimony of Detective McRae, wherein she informed the trial judge that defendant had reported that two ,.of the jurors were sleeping during testimony. In response, the trial judge asked the jurors to stand up and stretch in an effort to reener-gize themselves. The trial court later allowed defense counsel the opportunity to review security camera footage to substantiate defendant’s Report. At a hearing on the motion the next day, defense counsel stated that she was unable to determine from the camera footage whether the- jurors were sleeping, but she called an investigator for the public defender’s office to testify as to his observations. The investigator testified that he witnessed one juror “fighting [sleep]” but admitted that he “never saw her sleeping.” The trial-judge also stated that he observed “a-nod or two here and there,” but that this was a common occurrence in any jury trial, and that the testimony regarding jurors sleeping put forth by defendant was “underwhelming.” Accordingly, the trial judge denied the motion. Defense counsel then moved for a mistrial based on -the trial judge’s ruling, which the trial judge denied for the same reasons.
We find that the trial court did not abuse its discretion in denying defendant’s motion to substitute the jurors and consequently that the trial court did not abuse its discretion in denying defendant’s motion for mistrial. There is no evidence in the record indicating that any jurors were actually asleep. Defendant was the only person who claimed to witness any jurors actually asleep, and he did not testify to his observations at the hearing on the motion. No other potential witnesses in the courtroom could positively state that any jurors were asleep during trial. Moreover, we find that the trial judge gave defendant ample opportunity to establish grounds for substituting the jurors and that. the trial judge acted within . his Indiscretion in determining that, defendant had-failed to sufficiently support his claim.
Accordingly, we find no error'in the trial court’s denial of defendant’s motion for mistrial.

Errors Patent

We have reviewed, the record for errors patent in accordance with La. C.Cr.B. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 5.56 So.2d 175 (La.App. 5 Cir.1990), The record presents the following errors patent: . .
First, defendant's sentence on count two for his conviction of possession of a firearm by a convicted felon is illegally- lenient. At the time defendant committed this offense, La. R.S., 14:95.1(B) imposed a mandatory fine of not less .than one thousand dollars and not more than five thousand dollars. Neither the commitment order nor the transcript of the sentencing proceedings reflects the imposition of this mandatory fine as required by statute. Neither party has raised this issue on appeal.,
An appellate court has the permissive authority under La. C.Or.P. art. 882 to correct an illegally lenient sentence at any *219 time, even if the issue of an illegal sentence was not raised by the defendant or the State. State v. Williams, 800 So.2d 790, 802; State v. Guidry,, 12-296 (La.App. 5 Cir. 12/11/12), 106 So.3d 1062, 1067. However, in many indigent defendant matters, this Court has declined to correct an illegally lenient sentence where the district court Med to impose a mandatory fíne, See Guidry, 106 So.3d at 1068; State v. Campbell, 08-1226 (La.App. 6 Cir. 6/26/00), 16 So.Sd 1076, 1081. In the present case, the defendant is represented by the Louisiana Appellate Project, which provides its services for indigent criminal' defendants, thus we surmise that the defendant is indigent. Due | mto the defendant’s indigent status, we refrain from exercising our authority to correct the illegally lenient sentence.
Second, the sentencing transcript reflects an incomplete advisal regarding the time period during which defendant may seek post-conviction relief.[4] Accordingly defendant is hereby notified, by way of this opinion, that no application for post-conviction relief, including those applications seeking an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of La. C.Cr.P, arts. 914 and 922.

Conclusion

Upon review of the record we find no merit in the defendant’s three assignments of error. Accordingly, we affirm the judgment of the trial court.

AFFIRMED.

. At the time'the lineup took'place, there is no : evidence that defendant Had retained counsel for representation, therefore,’ we do not opine on defendant’s right to retained counsel under these circumstances and limit our discus,sion to defendant’s right to the presence of appointed counsel at- a pre-indictment physical lineup,

. The pertinent portion of the advice of lineup rights form states, “You have the right to have an attorney representing you present at this lineup to assure that your rights áre protected, If you are financially unable to, provide an attorney of your own, one will be provided to represent you. at no cost to you if you want one at the lineup. If your own attorney is unavailable for the lineup, you can request that the court appoint you with a substitute attorney for the purpose of this lineup."

.At trial, the State introduced photographs of the lineup participants. These photographs show that the other lineup participants possessed similar physical characteristics as- de- , fendant, ■ .

. According to the transcript, the trial judge advised defendant that he had "two years in which to file post-conviction relief”